257 N.J. Super. 296 (1992)
608 A.2d 425
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES VIGILANTE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 13, 1992.
Decided June 19, 1992.
*297 Before Judges KING, GRUCCIO and BROCHIN.
*298 Edward A. Jerejian argued the cause for appellant (Dell'Italia, Affinito & Jerejian, attorneys; Edward A. Jerejian, on the brief).
Kathleen M. Gusler, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Kathleen M. Gusler, of counsel and on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
After a trial by jury, defendant James Vigilante was convicted of aggravated manslaughter, N.J.S.A. 2C:11-4a; unlawful possession of a weapon, N.J.S.A. 2C:39-5b; and possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a. The conviction for possession of a weapon for an unlawful purpose was merged into the aggravated manslaughter conviction. He was sentenced to twenty years' imprisonment with ten years' parole ineligibility for aggravated manslaughter and to four years' imprisonment for unlawful possession of a weapon.
Defendant, who was indicted for murder, conceded at trial that he had shot and killed his father, Ronald Vigilante. His main reliance was on self-defense, but he also sought and obtained a charge that authorized the jury to return a verdict of passion/provocation manslaughter. However, his claims of self-defense and passion/provocation manslaughter were rejected by the jury.
Defendant's principal argument on appeal is that the trial court's jury instructions were erroneous. Without having objected on this ground, defendant asks us for a reversal of his conviction because the jurors were not instructed that in order to convict him of murder, the State was obliged to disprove passion/provocation manslaughter beyond a reasonable doubt. The defendant also argues that the trial judge erred by permitting the State to show that defendant owed gambling debts, used cocaine and worked only two or three days a week. *299 Alternatively, defendant contends that the sentence imposed on him was excessive.
We agree with defendant that the trial court's jury instructions were erroneous because they did not adequately inform the jury that in order to convict defendant of murder, the State was obliged to prove beyond a reasonable doubt that he was not acting "in the heat of passion resulting from a reasonable provocation" within the meaning of N.J.S.A. 2C:11-4b(2) when he committed the homicide. State v. Coyle, 119 N.J. 194, 221-222, 574 A.2d 951 (1990); State v. Grunow, 102 N.J. 133, 145, 506 A.2d 708 (1986); State v. Powell, 84 N.J. 305, 315 n. 10, 419 A.2d 406 (1980). The State does not argue to the contrary. However, it contends that the error was not prejudicial because there was insufficient evidence for the jury to find the necessary "passion" and "reasonable provocation." If the State's contention were correct, passion/provocation manslaughter should not have been submitted to the jury at all, the erroneous instruction was harmless error, and a reversal of defendant's conviction would not be required. See State v. Erazo, 126 N.J. 112, 123, 594 A.2d 232 (1991); State v. McClain, 248 N.J. Super. 409, 416, 591 A.2d 652 (App.Div. 1991), certif. denied, 126 N.J. 341, 598 A.2d 897 (1991). For the following reasons, however, we conclude that the evidence was sufficient to support a verdict of passion-provocation manslaughter.
State v. Mauricio, 117 N.J. 402, 411, 568 A.2d 879 (1990), defines the elements of passion/provocation manslaughter as follows:
the provocation must be adequate; the defendant must not have had time to cool off between the provocation and the slaying; the provocation must have actually impassioned the defendant; and the defendant must not have actually cooled off before the slaying. [Citation omitted.] The first two criteria are objective, the other two subjective. If a slaying does not include all of those elements, the offense of passion/provocation manslaughter cannot be demonstrated. [Citation omitted.]
The State presented evidence from which the jury could have found that defendant procured a handgun from a friend and *300 then, armed with the gun, went home intending either to murder his father or to steal his money. If the jury found that defendant's primary purpose in returning home was to commit theft, they could also have found that defendant had armed himself so that he would be prepared for murder if he was discovered. Obviously, the State's version of the facts did not require a passion/provocation manslaughter charge.
However, from the testimony of defendant, his mother, his sister and a psychiatrist who testified as an expert witness, the jury could have found this different scenario. Ronald Vigilante, defendant's father, was a former Newark policeman who had been dismissed from the police force. Although shorter than defendant, Ronald was stronger than he. Ronald had been committed to the Carrier Clinic for approximately three months and was later treated at the Belleville and Bloomfield Community Mental Health Centers. Defendant's psychiatric expert testified that Ronald
was suffering from an acute psychosis with aggressive features probably of a schizophrenic-type psychosis, that he was extremely dangerous, that he was dangerous to himself and that he was dangerous to others....
Major tranquilizers had been prescribed for him, but he was lax about taking his medications. He was continually verbally abusive, and repeatedly physically abusive, to defendant and to the rest of the family. Defendant was "petrified" of him.
In 1974, Ronald Vigilante wanted his daughter to end her telephone call. He ripped the phone out of her hand, beat her with it, pulled out his gun and told her and her mother that he was going to shoot them. In 1980, defendant's mother was arguing with her husband when he grabbed a gun and threatened to kill her and their children. In 1984, defendant intruded on his parents while his father was hitting his mother. Ronald picked up a chair, threw it at defendant and knocked him down a stairway. In 1988, Ronald yelled at defendant for failing to return a videotape and then threw a rocking horse at him, striking him with it. In addition, unspecified acts of abuse occurred on a daily basis. Ronald was constantly screaming *301 and threatening his family members. His children were afraid of him and tried to avoid him.
Defendant testified that during the period immediately preceding the homicide, his father was angry with him because of the mistaken belief that he had taken some of his father's money. Defendant lived in a basement apartment of his parents' home, but he had spent the night before the homicide in a motel in order to avoid his father's wrath. On the night of the slaying, he expected his father to be out of the house, spending the evening with friends. Defendant entered the basement to get some clothes. His father was home and apparently heard defendant enter. Defendant's father screamed that he would kill defendant for stealing his money, and he started down the stairs toward defendant.
Because of defendant's father's mental illness, his violent temper, and his history of repeated verbal and physical assaults on defendant and on other members of the family, defendant was frightened that his father really would kill him. Defendant denied that he had procured a gun from a friend before he reached home. He testified that when he heard his father screaming at him and descending the stairs toward him, he stepped into the laundry room and retrieved a gun his father always kept there. His father pushed defendant against a pole and bent down to pick up a pipe wrench. As his father was about to pick up the wrench, defendant shot him and ran barefoot out of the house and into the wet night. When he arrived at his friends' garage shortly afterwards, he was pale and shaking.
The State argues that the first element of proof required by State v. Mauricio, 117 N.J. at 411-13, 568 A.2d 879, adequate provocation, is missing. Citing State v. Crisantos (Arriagas), 102 N.J. 265, 274, 508 A.2d 167 (1986), the State contends that defendant's evidence does not establish a rational basis for passion/provocation manslaughter because "mere words"  referring to the victim's threats to kill his son for stealing from *302 him  "no matter how offensive, are not enough to warrant" such a charge. Furthermore, the State says, "While defendant claimed that his father shoved him into a pole, defendant's reaction of shooting his father with the gun as his father went for a pipe wrench is insufficient to support a finding that there was adequate provocation since defendant's response was totally out of proportion to the alleged provocation." In our view, these arguments rest on an inaccurate statement of the evidence and of the applicable law.
The facts of State v. Bonano, 59 N.J. 515, 284 A.2d 345 (1971), are analogous to those of the present case in some pertinent respects. In Bonano, defendant's daughter told her uncle that defendant had just struck her mother. Aroused by that report, the uncle grabbed a kitchen knife and made his way to defendant's house. Defendant was standing on his porch, armed with a handgun. Id. at 517, 284 A.2d 345. The uncle, who had had two prior fights with defendant, drew the knife and said, "I'm going to come and kill you." Defendant fired his gun and killed the uncle. Id. at 523, 284 A.2d 345. Defendant's primary reliance at trial was on self-defense. However, the trial court also charged passion/provocation manslaughter and its charge on that subject was incorrect. Holding that the error was prejudicial, the Court said:
If the jury did not credit defendant's testimony that he believed he was in danger of being killed or seriously injured, and hence rejected the plea of self-defense, but nevertheless did believe that [the uncle] made the menacing gesture just described, it might properly have considered such conduct to be adequate provocation to reduce to manslaughter what would otherwise have been murder. We note, however, that the words themselves, the verbal threat, would not have been sufficient to reduce the homicide from murder to manslaughter. The inadequacy of words alone to produce this result is well settled in this state. The court's charge, erroneously confining manslaughter to those killings which are unintentional, effectively deprived defendant of his right to have the jury weigh this alternative.
Id. at 523-24, 284 A.2d 345. [Footnote and citations omitted.]
In State v. Erazo, supra, 126 N.J. at 122, 594 A.2d 232, as in the present case, the jury had not been accurately instructed on allocating the burden of proof in connection with passion/provocation *303 manslaughter and, to decide whether the error was prejudicial, the Supreme Court considered whether the evidence justified a passion/provocation charge. The defendant in Erazo had killed his wife. The Court observed that "the tension between defendant and the victim on the night of the slaying ... was ... a continuing strain in a marriage fraught with violence." Id. at 124, 594 A.2d 232. But the final provocation was "words," the victim's threatening defendant that she would induce the revocation of his parole by reporting that he had caused her what was in fact a self-inflicted cut. Erazo thus recognizes that although "words" are not legally sufficient for passion/provocation manslaughter when they are mere insults, "words" may be sufficient when they convey a significant threat, even one that does currently not put the defendant's own life at risk.
In support of its position that the possession of the gun by the defendant in the present case excludes passion/provocation manslaughter, the State quotes from State v. Crisantos (Arriagas), supra 102 N.J. at 274, 508 A.2d 167, and State v. Oglesby, 122 N.J. 522, 536, 585 A.2d 916 (1991), that "[t]he offense is not manslaughter but murder where the defendant alone was armed...."[1] However, in State v. Crisantos (Arriagas), supra, 102 N.J. at 275, 508 A.2d 167, the opinion goes on to say:
Obviously, abstract rules are only guides in defining the parameters of passion/provocation manslaughter. The specific evidence in each case must be carefully evaluated in the context of the entire record to determine whether passion/provocation manslaughter may properly be considered by the jury.
See also State v. Erazo, supra, 126 N.J. at 124, 594 A.2d 232 which reiterates that "an abstract definition is only a guide in defining the parameters of passion/provocation manslaughter."
In State v. Guido, 40 N.J. 191, 191 A.2d 45 (1963), the accused's use of a gun against an unarmed victim was held not to exclude a passion/provocation manslaughter verdict. The *304 defendant in that case claimed to have taken a gun from her husband's traveling bag and to have killed him while he was asleep. The Court held that she was entitled to a passion/provocation manslaughter charge. Id. at 211, 191 A.2d 45. Similarly, in State v. Erazo, supra, where the Court held that there was a rational basis for a passion/provocation manslaughter charge, the victim sustained "four knife wounds to her hands, arms, and chest; three slashes to the neck; and a single stab wound to the back that, according to the medical examiner, killed her instantly." Id., 126 N.J. at 120, 594 A.2d 232. Only the defendant was armed.
State v. Guido, 40 N.J. 191, 211, 191 A.2d 45 (1963), illustrates that a past history of abuse may exacerbate the effect of a threat. In that case, the Court said:
It seems to us that a course of ill treatment which can induce a homicidal response in a person of ordinary firmness and which the accused reasonably believes is likely to continue, should permit a finding of provocation. In taking this view, we merely acknowledge the undoubted capacity of events to accumulate a detonating force, no different from that of a single blow or injury. The question is simply one of fact, whether the accused did, because of such prolonged oppression and the prospect of its continuance, experience a sudden episode of emotional distress which overwhelmed her reason, and whether, if she did, she killed because of it and before there had passed time reasonably sufficient for her emotions to yield to reason.[2]
In State v. Coyle, 119 N.J. 194, 226-28, 574 A.2d 951 (1990), the Supreme Court extended this holding of Guido to abuse of a friend or relative of the accused. The Court ruled:
No principled reason prohibits the application of passion/provocation where the abuse was inflicted over a period of time on one with whom the defendant shares a familial or similarly close relationship.
....
When there is evidence that the decedent has, in the past, consistently physically abused one with whom the defendant stands in close relationship, and that the defendant knows of that abuse, "the jury must be told that a *305 finding of provocation may be premised on `a course of ill treatment which can induce a homicidal response in a person of ordinary firmness and which the accused reasonably believes is likely to continue.'" State v. Kelly, supra, 97 N.J. at 219 [478 A.2d 364] ... (quoting State v. Guido, supra, 40 N.J. at 211 [191 A.2d 45] ...).
In State v. McClain, 248 N.J. Super. 409, 418-19, 591 A.2d 652 (App.Div. 1991), another part of this Court interpreted State v. Kelly, 97 N.J. 178, 478 A.2d 364 (1984), as holding that evidence that defendant had been abused by her victim over a long period of time was relevant only to the honesty of the defendant's claim that at the time of the homicide she had been overpowered by rage, but that that evidence was not relevant to the objective reasonableness of the provocation. We respectfully disagree. Kelly was considering the relevance of expert testimony about the battered woman's syndrome to a homicide defendant's claim of self-defense. The Court held that expert testimony that would buttress the defendant's claim of a history of abuse was potentially relevant to prove that at the time of the homicide, the defendant honestly believed that she was in imminent danger of death. Id. at 202, 478 A.2d 364. The Court also held that that testimony was relevant to the objective "reasonableness of defendant's belief that she was in imminent danger of death or serious injury." Id. at 204, 478 A.2d 364. The Court said:
While defendant's testimony was somewhat lacking in detail, a juror could infer from the use of the word "beatings," as well as the detail given concerning some of these events (the choking, the biting, the use of fists), that these physical assaults posed a risk of serious injury or death. When that regular pattern of serious physical abuse is combined with defendant's claim that the decedent sometimes threatened to kill her, defendant's statement that on this occasion she thought she might be killed when she saw [the victim] running toward her could be found to reflect a reasonable fear....
Id. at 204-05, 478 A.2d 364.
Similarly in the present case, if the jury believed defendant, they were entitled to find that past history supported defendant James Vigilante's fear that when his father, screaming accusations and a threat to kill him, descended the stairs and bent down to pick up a pipe wrench, his father had the intention and *306 the capability to carry out the threat. The jury could find that when defendant retrieved the gun from the laundry room and fired it, events had accumulated a detonating force which caused him to explode. See State v. Erazo, supra, 126 N.J. at 124, 594 A.2d 232. Cf. State v. Darrian, 255 N.J. Super. 435, 450-452, 605 A.2d 716 (App.Div. 1992).
We emphasize that the jury was not obligated to accept the version of events that was proffered by defendants' witnesses. The evidence presented by the State which showed that defendant had procured a loaded gun in advance of his returning home was extremely persuasive. That evidence, if believed, discredited defendant's testimony that he picked up his father's gun from the laundry room only when he heard his father approaching. If the jury rejected defendant's explanation for his possession of the gun, they undoubtedly also rejected the rest of his story.
However, the persuasiveness of defendant's case is not the test of whether the trial court's erroneous jury instructions on passion/provocation manslaughter were prejudicial. If there was a rational basis for the jury to have found from the evidence that defendant killed his father "in the heat of passion resulting from a reasonable provocation," N.J.S.A. 2C:11-4b(2), the trial court was required to accurately instruct the jury about the pertinent law. See State v. Mauricio, 117 N.J. 402, 417-18, 568 A.2d 879 (1990); State v. Crisantos (Arriagas), 102 N.J. 265, 275-76, 508 A.2d 167 (1986). The threshold for such an instruction is low; whenever there is room for dispute whether the jury can find defendant guilty of passion/provocation manslaughter, the jury must be instructed about that offense. See State v. Erazo, 126 N.J. 112, 123, 594 A.2d 232 (1991). As the Court stated in State v. Powell, 84 N.J. 305, 317, 419 A.2d 406 (1980), (quoting People v. Dortch, 20 Ill. App.3d 911, 314 N.E.2d 324, 325-26 (1st Dist. 1974)), "A defendant in a criminal case is entitled to have the jury consider any legally *307 recognized defense theory which has some foundation in the evidence, however tenuous...."
In the present case, the evidence for passion/provocation manslaughter satisfies these modest requirements. The trial court's erroneous instructions to the jury on passion/provocation manslaughter were therefore prejudicial. The judgment must be reversed and the case remanded for a new trial on aggravated manslaughter.
We disagree with defendant's contention that admission of evidence of his cocaine use and gambling debts was error. That evidence was relevant as part of the proof of his animosity toward his father and also to show defendant's need for money. It was therefore relevant to the two possible motives which the State posited for defendant's returning home and killing his father, theft and hatred.
Defendant's complaints about his sentence are moot in view of our reversal of his conviction for aggravated manslaughter.
The conviction for unlawful possession of a handgun is affirmed. The conviction for aggravated manslaughter and the conviction for possession of a weapon for an unlawful purpose, which was merged into the aggravated manslaughter conviction, are reversed and remanded for a new trial.
NOTES
[1] The opinions in those cases cite 1 O. Warren and B. Bilas, Warren on Homicide § 110 at 525-26 for the quotation.
[2] Guido continues in terms which may also be applicable to the present case:

The defendant's state of mind could have been described more fully. Perhaps it was not because some doubt arose at the trial with respect to whether she could testify as to her thoughts and feelings. Such testimony is, of course, proper.