The appellant, Marguerite Louise Brooks, was convicted of the murder of her husband, Lewis Brooks, and was sentenced to life imprisonment. On this appeal of that conviction, she raises two issues.
 I
First the appellant argues that the trial court erred by not granting her motion for judgment of acquittal and motion for new trial on the ground that the weight of the evidence of self-defense was so overwhelming that the verdict of guilt was wrong and unjust.
The evidence presented at trial tended to show that on September 18, 1992, the appellant was walking down the street with her friend Jeanette McLendon when Lewis Brooks, the appellant's husband, who was accompanied by his friend Yancey Davis, accosted the appellant and told her to "bring [her] ass here." R. 493. Brooks began "cussing and fussing" at the appellant, grabbed the appellant's blouse, and jerked her toward him. R. 494-95. The appellant pulled free. Then she and Ms. McLendon, pursued by Lewis Brooks and Yancey Davis, ran across the street to Ms. McLendon's house. Brooks was drunk and angry and he told Yancey Davis that he was "going to kill that bitch," referring to the appellant. R. 497.
According to Ms. McLendon, the appellant said "that she needed something . . . she wasn't going to come out that door empty-handed." R. 498. When McLendon informed the appellant that there was a gun in the dresser drawer, the appellant took the gun and went outside. Seeing her husband, the appellant told him that "she wasn't going to let him hurt her no more and [to] stay back." R. 498. Lewis Brooks advanced toward the appellant with his hands raised and she told him again, "Stay back; I will shoot." R. 499. Brooks said, "You got the gun; go on and do what you got to do." R. 499. When Brooks continued to move toward the appellant with his hands up, the appellant shot him.
The undisputed evidence at trial established that the appellant was a battered wife who had suffered physical abuse not only at the hands of her current husband, Lewis Brooks, but also at the hands of her former husband and another male companion with whom she had once cohabited. The State's expert witness, Dr. Karl Kirkland, a psychologist and certified forensics examiner, testified that the appellant suffered from "battered woman syndrome," R. 274, a type of post-traumatic stress disorder characterized by the following symptoms:
 "Depression, a feeling of restricted choice, chronic apprehensiveness, a great deal of anxiety, a tendency to blame oneself, increased dependency. Some people describe a psychological paralysis of the will. That is, it causes a person to stay in a battering relationship. For a long time women who stayed in battering relationships *Page 162 
were felt to be either masochistic or to be emotionally disturbed or else why would they stay. And the literature has not supported either of those theories. It basically says they stay because they are afraid." R. 277.
Dr. Kirkland testified that the appellant's "status as an abused woman or wife played a major role in her behavior at the time of the offense." R. 307.
Although evidence was presented concerning the battered woman syndrome from which the jury could have "determine[d that] the defendant had reasonable grounds for an honest belief that she was in imminent danger when considering the issue of self-defense," Ex parte Haney, 603 So.2d 412, 414 (Ala. 1992) (quoting State v. Koss, 49 Ohio St.3d 213, 551 N.E.2d 970, 973
(1990)), cert. denied, ___ U.S. ___, 113 S.Ct. 1297,122 L.Ed.2d 687 (1993), there was also evidence from which the jury could have determined that the appellant was not justified in using deadly force against her husband because she could have avoided the necessity of such force by remaining in Ms. McLendon's house. See Ala. Code 1975, § 13A-3-23(b)(1) ("a person is not justified in using deadly physical force upon another person if it reasonably appears or he knows that he can avoid the necessity of using such force with complete safety . . . [b]y retreating"); Collier v. State, 57 Ala. App. 375, 377,328 So.2d 626, 628 (1975), cert. denied, 295 Ala. 397,328 So.2d 629 (1976) (a necessary element of self-defense is that there be "no reasonable mode of retreat or escape").
 " 'Where, as here, the killing was admitted, the question of whether or not it was justified under the theory of self-defense was for the jury.' Townsend v. State, 402 So.2d 1097, 1098
(Ala.Cr.App. 1981). The issue of self-defense invariably presents a question for the jury whose verdict will not be disturbed on appeal. '[E]ven if the evidence of self-defense is undisputed, the credibility of the defendant with respect to the evidence of self-defense is for the jury, and they may, in their discretion, accept it as true or reject it.' Mack v. State, 348 So.2d 524, 529
(Ala.Cr.App. 1977).
". . . .
 " ' "Whether the killing of another was justified as an act of self-defense is a question for the jury, Turner v. State, 160 Ala. 40, 49 So. 828 (1909); and this is true even though the defendant's testimony as to how the difficulty occurred is uncontradicted."
 " 'Collier v. State, 49 Ala. App. 685, 275 So.2d 364, 367 (1973). "The weight and credence given the testimony of the accused as to the issue of self-defense is a question for the jury." Garraway v. State, 337 So.2d 1349, 1353
(Ala.Cr.App. 1976). See also Atchley v. State, 393 So.2d 1034, 1051 (Ala.Cr.App. 1981); Warren v. State, 380 So.2d 305, 307 (Ala.Cr.App. 1979), cert. quashed, 380 So.2d 307 (Ala. 1980); Graham v. State, 339 So.2d 110, 113 (Ala.Cr.App.), writ denied, 339 So.2d 114 (Ala. 1976).
 " ' "The trial court in its oral instructions to the jury set forth the law on self-defense. The jury resolved the issue against the appellant by finding him guilty. . . . Th[at] verdict is supported by evidence presented at trial. The trial court committed no error in failing to grant the appellant's motion for judgment of acquittal." ' Hilliard v. State, 610 So.2d 1204, 1205 (Ala.Cr.App. 1992)."
Quinlivan v. State, 627 So.2d 1082, 1087 (Ala.Cr.App. 1992).
 II
The appellant next contends that the trial court erred by instructing the jury that "battered woman syndrome" did not constitute legal provocation sufficient to reduce murder to manslaughter.
After the jury had been deliberating for some time, it returned to the courtroom to ask the trial judge the following questions: (1) "What is the definition of murder by law?" (2) "What is the definition of manslaughter by law?" (3) "Is 'battered woman syndrome' grounds for manslaughter?" and (4) "Is 'battered woman syndrome' considered provocation?" R. 711. The court answered the first two questions by reinstructing the jury on murder and heat-of-passion manslaughter. The court answered the third *Page 163 
and fourth questions simply by stating, "No." R. 711-12.
We note that other jurisdictions considering this issue have found provocation and heat-of-passion manslaughter instructions to be appropriate in prosecutions of battered victims who kill their batterers.
In State v. Vigilante, 257 N.J. Super. 296, 608 A.2d 425
(1992), the court held that a battered child prosecuted for killing his father was entitled to a heat-of-passion manslaughter instruction. The New Jersey court concluded that the child's past abuse and his contemplation of future abuse, combined with the father's threat to kill the child presented grounds for a provocation and heat-of-passion manslaughter charge.
 "It seems to us that a course of ill treatment which can induce a homicidal response in a person of ordinary firmness and which the accused reasonably believes is likely to continue, should permit a finding of provocation. In taking this view, we merely acknowledge the undoubted capacity of events to accumulate a detonating force, no different from that of a single blow or injury. The question is simply one of fact, whether the accused did, because of such prolonged oppression and the prospect of its continuance, experience a sudden episode of emotional distress which overwhelmed her reason, and whether, if she did, she killed because of it and before there had passed time reasonably sufficient for her emotions to yield to reason."
Vigilante, 257 N.J. Super. at 304, 608 A.2d at 429-30 (quotingState v. Guido, 40 N.J. 191, 211, 191 A.2d 45, 56 (1963)). See also Commonwealth v. Stonehouse, 521 Pa. 41, 555 A.2d 772
(1989) (wherein the court held that counsel was ineffective for failing to request a heat-of-passion manslaughter instruction in prosecution of battered wife for killing her husband); Statev. Felton, 110 Wis.2d 485, 329 N.W.2d 161 (1983) (same). See generally Comment, Provoked Reason in Men and Women:Heat-of-Passion Manslaughter and Imperfect Self-Defense, 33 U.C.L.A.L.Rev. 1679, 1714 (1986) (wherein the author states that "[b]roadening provocation to include long-term physical violence and expanding passion to include fear would subject women to the same level of accountability as men when they are provoked beyond reason. . . . A finding that [a battered woman] acted in the heat of passion indicates that her passionate response to provocation was reasonable under the circumstances").
In the present case, however, we need not decide this issue because defense counsel made no objection to the court's answers regarding manslaughter and the battered woman syndrome. The appellant has therefore failed to preserve this issue for review. See Rule 21.2, A.R.Crim.P. ("No party may assign as error the court's giving . . . of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection").
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.