[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 792 
Miguel Rudy Worthington, the appellant, was convicted of the intentional murder of David Marler and was sentenced to 40 years' imprisonment. He raises six issues on this direct appeal from that conviction.
 I.
The appellant asserts that the statements he made to the arresting officer prior to the time he was advised of hisMiranda[1] rights were improperly admitted into evidence. Those comments directed the police to the bloodstained clothes worn by the appellant on November 13, 1992, during the commission of the murder.
The appellant was arrested in Florida by Corporal Lonel Daniels of the Santa Rosa County, Florida Sheriff's Department based on an Alabama warrant charging the appellant with murder. Corporal Daniels' son, Billy, was a friend of the appellant's. Daniels arrested the appellant while the appellant was walking on the road in front of Corporal Daniels' house. Daniels testified that he placed the appellant in his patrol car and that the appellant
 "asked me if I would do him a favor. And I told him I would try. Not knowing what it was I said I would try. He advised me at that time that he had put some clothing, personal clothes on Panhandle Trail. He said that is near the end of the first road, he said behind a telephone post. And he asked me if I could pick them up for him since he was going to jail. I told him I would look for them and try to do so.
 "At that time he said also that there was some clothing that he had that had blood on it, he said is up under the bridge at Gulf Breeze. The bridge going over. He said, 'It's under the plastic there.' He said, 'I have them in a bag.' He said, 'I put them under there and I marked an X on the wall.' He said, 'I marked an X where they were."
". . . .
 "And when he got through with that, I said, 'Miguel, if I were you I wouldn't answer any more questions until after you have been advised of your rights.' Which at that time he said, 'I don't have anything else to say.' " R. 226-28.
"Miranda has never been held to apply to statements voluntarily made by defendants. If a defendant spontaneously volunteers information, either before or after being given the Miranda
warnings, those statements need not be suppressed." UnitedStates v. Edwards, 885 F.2d 377, 387 (7th Cir. 1989). See alsoCrawford v. State, 479 So.2d 1349, 1352 (Ala.Cr.App. 1985) ("An unsolicited remark, not in response to any interrogation, does not fall within the Miranda rule"); United States v. Lawrence,952 F.2d 1034, 1036 (8th Cir.) ("The protections afforded a suspect under [Miranda] apply only when the suspect is both in custody and being interrogated. A voluntary statement made by a suspect, not in response to interrogation, is not barred by theFifth Amendment and is admissible with or without the giving ofMiranda warnings."), cert. denied, 503 U.S. 1011,112 S.Ct. 1777, 118 L.Ed.2d 434 (1992).
 "Any statement given freely and voluntarily without any compelling influences is, of *Page 793 
course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [the holding in Miranda]."
Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630,16 L.Ed.2d 694 (1966). See also Britton v. State, 631 So.2d 1073,1078 (Ala.Cr.App. 1993); Williams v. State, 601 So.2d 1062, 1072
(Ala.Cr.App. 1991). The appellant's statement and the bloodstained clothes found as a result of the appellant's statement were admissible evidence.
 II.
The appellant argues that the State failed to present a prima facie case of murder. He contends that the State's case was based solely on circumstantial evidence too weak to uphold a conviction, because, he says, the only testimony that connected the appellant with the murder was the testimony of the victim's brother, William Marler, who the appellant alleges was intoxicated at the time of the incident; the State did not produce a murder weapon; and the autopsy did not prove that the victim's death resulted from injuries received in a stabbing. Additionally, the appellant contends that the evidence established that he acted in self-defense.
In Harris v. State, 649 So.2d 1315, 1321-22
(Ala.Cr.App. 1994), this Court set forth the legal principles governing the review of a conviction based on circumstantial evidence. Applying those principles in this case, we find that the appellant's conviction is supported by considerable evidence, both direct and circumstantial. An eyewitness (the brother of the victim) identified the appellant as the person whom he saw repeatedly stabbing the victim, who was unarmed, with a knife. The credibility of that witness was a question for the jury. The appellant's sister-in-law testified that the appellant confided that "he had gotten into a fight" and that he "thought he cut" the victim. R. 327. Corporal Daniels testified as to incriminating statements made by the appellant.
Additionally, there was evidence that the appellant was at the scene of the murder and that he and the victim had been arguing. Pants belonging to the appellant were stained with the blood of the same type as that of the victim. The victim suffered several cut and stab wounds consistent with wounds caused by a knife. Some wounds sustained by the victim appeared to be defensive wounds.
 "A jury is not bound by the testimony of the only eyewitness, otherwise it would be impossible to obtain a conviction where an accused is the only witness to a crime. Circumstantial evidence will support a conviction as strongly as direct evidence provided it points to the guilt of the accused. Kelsoe v. State, Ala. Cr. App., 356 So.2d 735 (1978)."
Bufford v. State, 382 So.2d 1162, 1170 (Ala.Cr.App.), cert. denied, 382 So.2d 1175 (Ala. 1980). The appellant's argument that the State failed to present a prima facie case of intentional murder is without merit.
The appellant attempted to portray the victim to the jury as drunk and aggressive on the night of the homicide. The appellant testified that the victim threatened him. However, the appellant could not remember exactly what occurred that night. He testified:
 "[I]f I actually picked up [a knife] on the [kitchen counter] at that time, I don't know. Because, by about that time we were meeting. It was just seconds, if that. . . . All I really remember is I had my left hand on his shoulder and I had my right hand up like this. Now, if I had — I don't know if I had a knife in my hand. I would like to know if I had a knife in my hand."
 ". . . [T]he next thing I really remember is I'm [lying] on the floor and William was on top of me and telling me to let go of the knife. And at which time I looked in my right hand and I had a knife in my hand." R. 394, 389. *Page 794 
" ' " 'The weight and credence given the testimony of the accused as to the issue of self-defense is a question for the jury.' Garraway v. State, 337 So.2d 1349, 1353
(Ala.Cr.App. 1976)." ' " Brooks v. State, 630 So.2d 160, 162
(Ala.Cr.App. 1993). " ' "The issue of self-defense invariably presents a question for the jury whose verdict will not be disturbed on appeal. '[E]ven if the evidence of self-defense is undisputed, the credibility of the defendant with respect to the evidence of self-defense is for the jury, and [it] may, in [its] discretion, accept it as true or reject it.' Mack v.State, 348 So.2d 524, 529 (Ala.Cr.App. 1977)." ' " Brooks v.State, 630 So.2d 160, 162 (Ala.Cr.App. 1993).
The question of the appellant's guilt has been decided by a jury, which apparently rejected the appellant's claim that he was acting in self-defense when he killed the victim. "When the jury's verdict is supported by the evidence, this court's function is not to reweigh the evidence or [to] substitute its judgment for that of the jury." Gayle v. State, 616 So.2d 378,380 (Ala.Cr.App. 1993).
 III.
The appellant contends that the trial court abused its discretion in permitting State's rebuttal witness Steven David Woodle to testify regarding an altercation he had with the appellant during which the appellant used a knife as a weapon. The trial court ruled that the testimony had already been "testified to." R. 473. " 'A defendant cannot complain of the admission of improper evidence when he himself has testified to the same facts.' Lewis v. State ex rel. Evans, 387 So.2d 795,807 (Ala. 1980)." Rowe v. State, 522 So.2d 328, 330
(Ala.Cr.App. 1988).
During appellant's cross-examination of Deputy Mike McBurnett, the appellant introduced a copy of the police "radio log" for October 8, 1992. Ms.Burnett explained that the log reflected that on October 8, Anit Anglin Worthington, the appellant's wife, had telephoned the olice complaining that there was a disturbance at the victim's residence and that a weapon was involved. R. 205. At the appellant's request, the police log was admitted into evidence. R. 204.
The appellant testified on direct examination that on October 8, 1992, he had an altercation with the victim at a party at the victim's house and that Billy Anglin (the appellant's brother-in-law) had to restrain the victim to prevent the victim from attacking the appellant. R. 397-99. On cross-examination, the appellant testified that later the same evening someone who had been at the party "beat up" Billy Anglin. R. 401. The defense did not object to the State's asking the appellant if he had "already pulled a knife . . . and slash[ed] it at . . . David [Woodle] and cut his jacket" before the victim had arrived at the October 8, 1992 party. R. 402. The appellant answered, "No, I did not." R. 402.
In rebuttal, the State called Steven David Woodle as a witness. Woodle testified that on October 8, 1992, he was at David Marler's house drinking with a group of people. Over defense objections based on relevancy and on the general exclusionary rule, which prohibits the introduction of prior bad acts of a defendant for the purpose of proving guilt as to the charged offense, Woodle was allowed to testify that he and Billy Anglin had gotten into a fight and that the appellant had intervened and had "swiped" at Woodle with a "butcher knife." R. 477. Woodle stated that the incident concluded when the police arrived.
 " '[I]t is a general principle that, where a matter has been gone into by one party to a cause, the other party has the right to explain away anything, if he can, that may have been brought out to his detriment.' Leonard v. State, 369 So.2d 873, 875 (Ala.Cr.App.), cert. denied, 369 So.2d 877
(Ala. 1979). Even evidence of other offenses may be admissible for the purpose of explaining an adverse inference created during cross-examination by the other party. As the Alabama Supreme Court has stated:
 " 'Th[e general] exclusionary rule [prohibiting evidence of other offenses] notwithstanding, when one party brings out part of a transaction or conversation, the other party may inquire further into the matter or bring out the whole subject for further examination. Logan v. *Page 795 State, 291 Ala. 497, 282 So.2d 898 (1973); Hocutt v. State, 344 So.2d 194 (Ala.Crim.App. 1977). This proposition of law, also known as the "rule of completeness," 7 Wigmore, Evidence §§ 2094-2125 (3d ed. 1940), serves the purpose of allowing a party to explain or rebut adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced by his adversary. See generally 22A C.J.S. Criminal Law § 660 (1961) and the cases cited therein.'
"Ex parte Tucker, 474 So.2d 134, 135 (Ala. 1985)." Sistrunk v.State, 630 So.2d 147, 152 (Ala.Cr.App. 1993).
The trial court did not err in allowing the State to rebut the appellant's testimony that a few days before the murder, under circumstances similar to those that existed on the night of the murder, the victim and the appellant had been engaged in a fight in which the victim was the aggressor.
 IV.
The appellant contends that the trial court erred in denying his motion requesting the court to appoint a psychiatrist and a private investigator to aid in his defense, pursuant toAke v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53
(1985).
The appellant alleged that he needed a court-appointed investigator to pursue his allegation that some witnesses had changed their tape-recorded pre-trial statements after they were offered money to testify against him and to prove that a number of guns had been removed from the victim's house after the incident. The trial judge correctly denied this motion, calling the motion "vague, general, and unsupported by any showing of need." C.R. 18. The trial judge informed the appellant that the witnesses' tape recorded statements could be used to impeach the witnesses if they changed their testimony on the witness stand. Furthermore, it was undisputed at trial that the appellant knew the victim kept at least one shotgun in his bedroom.
The appellant's claim that an investigator was necessary so that he might adequately prepare his defense is also unsupported. The appellant " 'made no showing of a particularized need or that such assistance was necessary for an adequate defense' as required under Ake. Nelson v. State,511 So.2d 225, 237 (Ala.Crim.App. 1986), aff'd, 511 So.2d 248
(Ala. 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755,100 L.Ed.2d 217 (1988)." Dill v. State, 600 So.2d 343, 371
(Ala.Cr.App. 1991) aff'd, 600 So.2d 372 (Ala. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993).
As to his request for a court-appointed psychiatrist, the appellant's defense was not based on insanity. The appellant acted as co-counsel throughout his trial. The appellant's statement during his direct examination that he "want[ed] a psychological evaluation" (R. 394) because he could not remember if he had a knife in hand when the altercation began, was not a sufficient reason for the trial court to order a psychiatric evaluation.
 " 'It has been repeatedly held by our courts that a denial of funds to pay defense experts for investigations and other assistance does not amount to a deprivation of constitutional rights. Dutton v. State, 434 So.2d 853
(Ala.Cr.App. 1983); Thigpen v. State, 372 So.2d 385 (Ala.Cr.App.), cert. denied, 372 So.2d 387
(Ala. 1979), cert. denied, 444 U.S. 1026, 100 S.Ct. 690, 62 L.Ed.2d 660 (1980). We have held that this includes psychiatric specialists. Tillis v. State, 292 Ala. 521, 296 So.2d 892
(1974); Dutton v. State, supra. A defendant has no right to receive a mental examination to determine his sanity at State expense whenever he requests one; absent such a right, the trial court is the proper screening agent as to such. Willis v. State, 441 So.2d 1030
(Ala.Cr.App. 1983); Dutton v. State, supra; Allums v. State, 368 So.2d 313 (Ala.Cr.App. 1979); Robinson v. State, 337 So.2d 1382
(Ala.Cr.App. 1976).'
 "Nelson v. State, 511 So.2d 225, 237
(Ala.Cr.App. 1986), affirmed, 511 So.2d 248
(Ala. 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988)."
Fisher v. State, 587 So.2d 1027, 1031 (Ala.Cr.App.), cert. denied, 587 So.2d 1039 (Ala. 1991), cert. denied, 503 U.S. 941,112 S.Ct. 1486, 117 L.Ed.2d 628 (1992). *Page 796 
 V.
The appellant contends that he was denied effective assistance of trial counsel. He argues that trial counsel: 1) failed to argue appellant's pre-trial motions, 2) failed to request experts for investigative matters and to determine appellant's sanity at the time of the offense, 3) failed to present a closing argument, 4) failed to object to leading questions by the prosecution, and 5) failed to devote his full attention to the case. The appellant also claims that he was "required to act as co-counsel and had to conduct much of his defence on his own." Appellant's brief at 11.
 "Claims of ineffective assistance of counsel cannot be raised for the first time on appeal. Samuels v. State, 584 So.2d 958 (Ala.Cr.App.), cert. denied, 584 So.2d 963 (Ala. 1991). In order for a claim of ineffective assistance of counsel to be reviewable on direct appeal it must be presented to the trial court in a motion for new trial. Ex parte Jackson, 598 So.2d 895 (Ala. 1992); Kelley v. State, 568 So.2d 405 (Ala.Cr.App. 1990)."
Cooper v. State, 644 So.2d 480, 481 (Ala.Cr.App. 1994).
Assuming that the claims were preserved for appellate review, we find them to be without merit.[2]
"To prevail on a claim of ineffectiveness of counsel, the petitioner must show (1) that his counsel's performance was deficient and (2) that he was prejudiced by his counsel's performance. Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." Cartwright v. State,645 So.2d 326, 329 (Ala.Cr.App. 1994). The appellant has presented only unsupported allegations as grounds that his trial attorney's performance was deficient. "[U]nder Strickland v. Washington,466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984), a 'defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.' "Cook v. State, 574 So.2d 905, 909 (Ala.Cr.App. 1990). Moreover, "[t]he prejudice prong of the Strickland test 'requires a showing that a different outcome of the trial probably would have resulted but for counsel's allegedly ineffective performance.' Ex parte Lawley, 512 So.2d 1370, 1372
(Ala. 1987)." Wesson v. State, 644 So.2d 1302 (Ala.Cr.App. 1994). The appellant has failed to meet this test and is thus not entitled to prevail on his claim alleging ineffective assistance of counsel.
 VI.
The appellant contends that his sentence was disproportionate to the crime and, therefore, constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. This issue was not preserved for review.
However, in the alternative, we note that the appellant's 40-year sentence is well within the statutory range of punishment of a term of imprisonment of not less than 10 years to "life or not more than 99 years." Ala. Code 1975, §13A-5-6(a)(1).
The appellant's contentions that his sentence was improperly enhanced because the State did not notify him that the enhancement provisions of Ala. Code 1975, § 13A-5-6(a)(4) (deadly weapon used in the commission of the offense), would be applied is without merit. The State is not required to notify a defendant that § 13A-5-6(a)(4) will be applied in sentencing.
The judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
[2] The appellant, acting pro se, filed a pre-trial "motion to dismiss attorney" on November 3, 1993. In this motion, the appellant alleged that trial counsel had not "acted upon his duties as an attorney to properly represent the [appellant] fairly" in the following ways: Counsel 1) had failed to "meet the [appellant's] needs and wants," 2) had "failed to go . . . and see his client when needed to do so, therefore . . . there is lack of communications and preparation between [appellant] and attorney," and 3) "has not considered or acted upon request to formally file motion(s) or subpoena(s) as properly requested by [appellant]." C.R. 16. No request for a hearing on the motion was made and this motion was denied on November 8, 1993, without a hearing. *Page 797