WELCH, Judge,
dissenting.
Destry Cord McKinney appealed from the circuit court’s denial of his Rule 32, Ala. R.Crim. P., petition. The petition sought postconviction relief from his August 12, 2004, conviction for murder made capital because it was committed by the use of a deadly weapon while the victim was in a vehicle, a violation of § 13A-5-40(a)(17), Ala.Code 1975, and his September 24, 2004, sentence to imprisonment for life without the possibility of parole. We affirmed his conviction in an unpublished memorandum and issued a certificate of judgment on September 27, 2005. See McKinney v. State, (CR-04-0044) 945 So.2d 1096 (Ala.Crim.App.2005) (table). McKinney timely filed this Rule 32 petition. After conducting evidentiary hearings on July 24, 2007, and January 29, 2008, the circuit court issued a detailed order denying the petition. That order reads, in part, as follows:
“38. [McKinney’s] claim of newly discovered evidence relates to an issue involving the pants that he wore on the date of the incident in question. When [McKinney] was booked in the Talladega County Jail his personal effects and belongings were inventoried and maintained at the Talladega County Jail pending his incarceration. [McKinney’s] pants were seized by investigators for evidentiary testing purposes. The pants *499 were initially tested by an expert who issued a report. [McKinney] and his attorneys viewed the pants and other evidence on more than one occasion. [McKinney] and his attorneys had knowledge of cuttings from the pants and reports of testing prior to trial. [McKinney] and his attorneys were cognizant of the fact that [McKinney] alleged that he was hit by the victim’s vehicle and that his leg was injured. [McKinney] testified at trial and his testimony clearly warranted a self defense charge that was given the jury in this case. The jury rejected [McKinney’s] theory of self defense and his theory that he was not guilty.
“39. Prior to trial, and after hearing relating to discovery, the Court entered an order dated 20th day of March 2003 making the following findings:
“ ‘That counsel for [McKinney] has requested that the District Attorney forward to Larry Hughes[1] at the Department of Forensic Sciences the pants of [McKinney], and any cuttings from the pants of [McKinney], to compare any blood that might be on the pants or cuttings to the known blood of [McKinney], Destry McKinney.’
“The pants were submitted to the laboratory for additional testing, and the report clearly indicated that the pat of blue corduroy slacks was received with a large defect in the leg at the cuff area. As stated hereinabove, [McKinney] and counsel for [McKinney] were allowed to inspect the pants on numerous occasions prior to trial and had a copy of all reports from the laboratory. There is no evidence whatsoever that the District Attorney had knowledge of the cloth cutting that was later discovered with [McKinney’s] personal effects at the Tal-ladega County Jail.
“40. Subsequent to the jury verdict, a member of [McKinney]’s family obtained his personal effects from the Talladega County Jail. Contained in the personal effects was a piece of cloth that appeared to have been cut from [McKinney’s] pants. The cutting contained a stain that appeared to be blood. The Court took this issue up in the motion for new trial as evidenced by the Court’s order that is attached hereto and marked as Exhibit ‘A.’ The blood on the pants was subsequently tested and was that of [McKinney]. The test was performed after the Court ruled on [McKinney’s] motion for a new trial.
“41. [McKinney] contends that the blood that was on the cutting from his pants is newly discovered evidence that justifies relief in this case. Subsection (e) of Rule 32.1 of the Alabama Rules of Criminal Procedure provides as follows:
‘Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
“ ‘1. The facts relied upon were not known by the petitioner or the petitioner’s counsel at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
“ ‘2. The facts are not merely cumulative to other facts that were known.
“ ‘3. The facts do not merely amount to impeachment evidence;
“ ‘4. If the facts had been known at the time of trial or of sentencing, *500 the result probably would have been different; and
“ ‘5. The facts establish that the petitioner is innocent of the crime for which the petitioner was convicted or should not have received the sentence that the petitioner received.’
“42. Justice Maddox stated the following in his book, Alabama Rules of Criminal Procedure, Vol. 2, 4th ed, 2004. p. 1276-1277, concerning newly discovered evidence:
“ ‘The Rule requires that the “newly discovered material facts” were not known to the petitioner or his counsel during petitioner’s trial, sentencing, or within time to file a post trial motion pursuant to Rule 24 or within time to have been included in a previous collateral proceeding, and could not have been discovered by any of those times through the exercise of reasonable diligence. In addition, the facts cannot be merely cumulative; (they must not merely amount to impeachment evidence); and the facts, had they been known at the time of trial, must show that the “result probably would have been different”; and “[t]he facts [must] establish the petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that the petitioner received.” ... Clearly subsection (e) ... places a heavy burden on a petitioner when the ground is “newly discovered material evidence.” ’
“43. [McKinney] testified that he does not know how the cloth cutting was placed with his personal belongings that were inventoried at the Talladega County Jail. [McKinney] testified that if the jury had known about his blood being on his pants that he would have been found not guilty and that it would have shown the jury that he was injured by the vehicle and that he killed the victim in self defense. It has not been sufficiently explained to this court who placed the cloth cutting into [McKinney’s] possessions at the county jail and it would be mere speculation on the part of this court to determine from the evidence presented the person or persons that placed the cloth in with his personal belongings.
“44. The Court set forth hereinabove testimony cited by the Alabama Criminal Court of Appeals in its [unpublished memorandum]. The Court did that for the purpose of evaluating the testimony so as to ascertain whether or not the cloth cutting and the test performed post-conviction amounts to newly discovered evidence that would mandate this Court granting [McKinney] relief for newly discovered evidence. It is clear that [McKinney] and the victim had numerous altercations on the date of the incident in question. The testimony is clear that the victim drove the car toward [McKinney] on more than one occasion prior to the final incident and [McKinney] was always able to avoid any contact by either jumping or getting out of the way of the vehicle. The testimony bears out that [McKinney] had a gun in his hand and was walking up the driveway when he contends that the victim was coming at him in her vehicle. [McKinney] testified that he pointed the gun at the victim and fired the pistol. [McKinney] testified in the Rule 32 hearing that he fired the pistol at about the same time that the car struck him in the leg. [McKinney] testified at trial that the vehicle hit him in his left leg, he was injured, and that he fired in self defense. The State of Alabama introduced at trial a photograph of the front portion of the vehicle that contained a stain consistent with blood. Dr. Joseph Embry, the forensic pathologist, testi *501 fied that the victim had a gunshot wound through her neck and upper back and injuries to her face, hands, chest and abdomen indicating that the bullet hit something before it hit the victim. Mitch Rector, the firearms and tool marks examiner, testified that he examined the victim’s clothing: that he did not find any stippling on the victim’s clothing but he did find gunpowder debris in a sweeping of the victim’s sweatshirt. Mitch Rector testified that the farthest distance he had ever seen gunshot residue was between five and seven feet from the muzzle of the gun. Based upon that testimony, and the testimony of [McKinney], it is clear that [McKinney], when he fired the gun, was in close proximity to the windshield of the vehicle and the person of the victim. The expert testimony from the State of Alabama would have been consistent with [McKinney’s] testimony that when he fired the pistol he was directly in front of the vehicle. [McKinney] testified that his leg was injured and that he was subsequently treated. [McKinney] contends that his rights were prejudiced by the trial jury not receiving as evidence testing of his pants to show that his blood was on the pants.
“45. The Court finds that the cutting of the cloth from [McKinney’s] pants could have been discovered by [McKinney] and counsel for [McKinney] through the exercise of reasonable diligence. This Court ordered that the pants be tested a second time prior to trial. The report from the lab clearly indicated that when the pants reached the lab it had a defect. [McKinney] and counsel for [McKinney] inspected the pants on at least two occasions. The fact that a posttrial test on the pants indicated [McKinney’s] blood was on his pants was merely cumulative to other facts that were known and presented to the jury. It is obvious from the testimony at trial that the pistol was no more than five or seven feet from the victim when it was fired and that gunpowder was transferred through the front windshield onto the person of the victim. [McKinney] has not shown to the Court that the result of the trial probably would have been different if the jury had known about the blood on his pants. The jury rejected the self-defense theory. [McKinney] in this case has not presented facts that establishes [McKinney] is innocent of the capital offense of murder as charged in the indictment in this case. Therefore, this Court finds that the cloth cutting and the subsequent test confirming that his blood was on the pants does not rise to the level of newly discovered evidence that would warrant the granting of a new trial and the granting of Rule 32 relief.”
(C.R. 106-13.)
McKinney appealed, arguing, as he did in his petition, that newly discovered evidence exists and that the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because, for reasons unexplained in the record, exculpatory evidence in the custody of the State was withheld from testing by the Department of Forensic Sciences (“DFS”).
The circuit court’s order provides a good general summary of the facts. For purposes of this writing I will add what I believe to be a few additional relevant facts.
On February 6, 2000, McKinney shot Stevelynne Seals while Seals was seated in the driver’s seat of her automobile. McKinney asserted that the shooting was in self-defense because, he said, he shot Seals as she attempted to run him over with her car and that as he was struck by the car he fired his weapon. He claimed *502 that his left leg was injui’ed by the blow from the car. There was a bloodstain on the front bumper of Seals’s vehicle. However, this stain was not tested; thus, its source was not determined. Evidence regarding the presence of a bloodstain on the bumper of Seals’s car and forensic evidence concerning the details of the shooting were consistent with McKinney’s claim of self-defense.
Seals’s blood got on the blue corduroy pants being worn by McKinney when McKinney removed Seals from her vehicle and placed her in his truck for transport to the hospital. McKinney was arrested on February 6, 2000. At 5:50 p.m. on that date, McKinney gave his clothes to Captain Jimmy Kilgore of the Talladega Sheriffs department. McKinney claimed that his blue corduroy pants were “entirely intact” when he gave them to a Sheriffs deputy. (Supp.Rec. R. 83.) State’s exhibits 125 through 128, photographs showing McKinney’s pants legs at the time of his arrest, were presented by the defense as evidence that the pants were intact at the time of his arrest. (Supp.Rec. R. 83, 85.) The State did not dispute McKinney’s assertion that the photos failed to depict a defect in the pants. McKinney testified at the Rule 32 hearing that his pants “were not defective in any way when [he] pulled them off.” (Supp.Rec. R. 92-93.) The pants remained in the custody and control of the State of Alabama until after trial. Also, on February 6, 2000, at 7:56 p.m., a Sgt. Rumbl of the Talladega Sheriffs Department placed a piece of blue corduroy cloth — cloth apparently taken from McKinney’s pants — in an envelope containing McKinney’s personal property. This envelope was sealed and was kept in the custody and control of the Talladega County Sheriffs Department until after trial. McKinney stated that his personal-property envelope was not presented to him and he did not sign an inventory receipt. A jail official testified at the motion for a new trial that the personal-property envelope provided a place for McKinney’s signature. The official stated that inmates are asked to sign the envelope containing their personal property to confirm its contents. The jail official did not know why McKinney had not signed the envelope.
Defense counsel testified at the Rule 32 hearing that he did see the pants before trial and that he was aware that the pants had been cut and parts removed. However, counsel did not assume that cuttings from the pants were missing. He assumed that the pants and all cuttings had been tested in compliance with the trial court’s order of March 20, 2003. The test results failed to show the presence of McKinney’s blood.
During McKinney’s trial, the prosecution argued to the jury that because there was no blood on McKinney’s pants, he could not have been struck by Seals’s car as he claimed and that the blood on the front of Seals’s car, which had not been preserved for testing, could not have been McKinney’s blood. Moreover, because there was no blood, McKinney was not being truthful and could not be trusted.
Following a guilty verdict, McKinney’s family went to the jail to get McKinney’s personal belongings. The envelope sealed by Sgt. Rumbl was opened and the contents removed. At this time, McKinney discovered that the State had not submitted the blue cloth for forensic testing. McKinney filed a motion for a new trial, which was denied after a hearing. However, the trial court granted McKinney’s motion to have the blue cloth tested by the DFS. The circuit court found that the test result revealed that blood on the blue cloth was McKinney’s blood. Based on those results, McKinney filed the instant Rule 32 *503 petition claiming that newly discovered evidence entitled him to relief.
The majority found, as did the circuit court, that the blue cloth was not newly discovered evidence as that term is defined under Rule 32.1(e), Ala. R.Crim. P. The majority, as did the circuit court, emphasized the fact that the defense had access to the pants before trial and saw that a section of the pants was missing, yet made no inquiry into this fact. The majority also excuses McKinney’s Brady claim because, it reasons, there was no showing that the State or any of its agents intentionally or inadvertently withheld the cloth. Additionally, the majority found that even if the jury had heard that McKinney’s blood was on his pants, the result of the trial probably would not have been different.
I believe the majority misses the point. The issue is not whether or when McKinney knew that a section of his pants was missing — it appears that he did know this — the issue is whether McKinney should have known that the State had placed the missing piece of cloth with McKinney’s personal property in an envelope and locked it away for safekeeping. Moreover, although not the subject of this writing, I wish to not that I disagree with the majority’s Brady analysis. “ ‘[Tjhere are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.’ ” Wilson v. State, 874 So.2d 1145, 1149 (Ala.2003)(emphasis added), quoting Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286. I also wish to note that I disagree with the majority’s finding that the withheld evidence would not have changed the result of the trial. I do not believe that the evidence negating self-defense was so strong as to allow this finding.
I believe that it is too high a burden to expect the defense to assume that the cloth at issue was missing. Moreover, even if the defense knew it was missing, I do not believe that the defense would have expected to find it sealed in McKinney’s personal-property envelope. No reasonable person would expect an officer of the State to seal a piece of evidence in a defendant’s personal-property envelope. There was no testimony indicating that McKinney actually saw his belongings being put in an envelope, and he did not sign the envelope to acknowledge the inventory of its contents. We cannot assume that McKinney had knowledge that the cloth was locked away with his personal belongings, absent some testimony to that effect. There is no reason McKinney or his counsel should expect a State’s agent to separate from his pants a piece of cloth cut from the pants, which could obviously be evidence, then place the piece of cloth in an envelope with personal property for storage and keep it secreted from access by either the State or the defense until after trial.
Most importantly, the defense asserted by McKinney was self-defense. When the issue of self-defense is raised, the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense lies with the State. Booker v. State, 645 So.2d 355 (Ala.Crim.App.1994). The decision to accept or reject the credibility of the defendant’s evidence of self-defense falls on the trier of facts. Brooks v. State, 630 So.2d 160 (Ala.Crim.App.1993). The presence of blood on McKinney’s pants establishes a solid reasonable ground to doubt that the State proved beyond a reasonable doubt that McKinney was not acting in self-defense when he shot Seals. *504 Moreover, it negates the disparaging remarks made by the prosecution during closing arguments regarding the lack of evidence supporting McKinney’s version of the facts and McKinney’s lack of truthfulness. I believe the jury might not have rejected McKinney’s theory of self-defense had it known that his blood was on his pants. If the jury agreed that the State failed to disprove self-defense beyond a reasonable doubt, then McKinney has shown actual innocence, i.e., self-defense would result in an acquittal. Thus, I believe McKinney met all the requirements for newly discovered evidence set forth in Rule 32.1(e), Ala. R.Crim. P.
Therefore, I must respectfully dissent with the majority’s affirmance of the circuit court’s ruling.

. Hughs's name is also spelled "Huys” in the record.