907 So.2d 470 (2005)
Gregory KNIGHT
v.
STATE of Alabama.
CR-00-2694.
Court of Criminal Appeals of Alabama.
October 1, 2004.
Opinion on Return to Remand February 25, 2005.
*472 Richard D. Jensen, Foley, for appellant.
William H. Pryor, Jr., and Troy King, attys. gen., and Kristi L. Deason Hagood and Stephen Shows, asst. attys. gen., for appellee.
WISE, Judge.
The appellant, Gregory Knight, was convicted of murdering his wife, Latisha Knight, while she was in a motor vehicle, an offense defined as capital by § 13A-5-40(a)(17), Ala.Code 1975. The jury recommended, by a vote of 10-2, that Knight be sentenced to death. The circuit court accepted the jury's recommendation and sentenced Knight to death.
The State's evidence tended to show the following. On June 17, 2000, Knight stabbed his wife to death while the two were in a motor vehicle. At the time of the murder Knight and Latisha had been married for two years but were separated. The couple had one child together and Latisha had another child while Knight was serving a prison sentence in Florida.[1] On the day before the murder Knight asked Latisha if he could come and visit the children. Latisha said that he could not. Later that day Knight saw Latisha and his cousin out together. Knight thought his wife and cousin were having an affair, and he became angry.
The next day Latisha came over to Knight's father's house and asked Knight to come and talk with her. When Knight left the house he took a butcher knife from the kitchen with him. As the two were driving in Latisha's car Latisha received a telephone call from Knight's cousin. Knight became angry, pulled out the butcher knife, and ordered Latisha to stop the car. She complied. Knight then stabbed Latisha 32 times. He dragged her body into a nearby wooded area and left the scene in her car. The coroner testified that some of the wounds inflicted on Latisha were 12 inches deep and penetrated her heart, lungs, liver, spleen, aorta, and face. Latisha's seven-month-old child was in the backseat during the stabbing.
After Knight disposed of Latisha's body he drove Latisha's car to Joseph and Jennifer Watson's house. The Watsons testified that when Knight arrived he was covered in blood and he asked them for a change of clothes. Jennifer Watson testified that she noticed that a baby was in the car and she convinced Knight to leave the *473 baby with them. Knight telephoned his stepmother and she picked him up at the Watsons. After Knight left the Watsons telephoned the police. Knight was arrested at his father's house. He confessed to stabbing Latisha to death and led police to where he had disposed of her body.
Knight pleaded not guilty by reason of mental disease or defect. § 13A-3-1, Ala. Code 1975. At trial Knight presented the testimony of a clinical forensic psychologist, Dr. Robert Anthony DeFrancisco. Dr. DeFrancisco testified that Knight, at the time of the murder, had a brief reactive psychosis where his emotions overtook his reason. He said that this would make him feel justified in killing Latisha. Dr. DeFrancisco classified the crime as a "crime of passion."
The jury convicted Knight of killing Latisha while she was in a motor vehicle, a murder defined as capital by § 13A-5-40(a)(17), Ala.Code 1975.
A sentencing hearing was then held before the same jury. See § 13A-5-46, Ala. Code 1975. At that hearing the State presented evidence that Knight was on probation at the time of the murder and that he had previously been convicted of robbery in the third degree in the State of Florida. Knight introduced the testimony of his family and friends, who asked the jury to recommend a sentence of life imprisonment. Dr. DeFrancisco also testified that it was his opinion that the murder was a crime of passion because Knight's emotions overtook his reason when he stabbed his wife. The jury, by a vote of 10-2, recommended that Knight be sentenced to death.
The circuit court directed that a presentence report be prepared in accordance with § 13A-5-47(b), Ala.Code 1975. After the report was completed, the circuit court conducted a separate sentencing hearing at which it allowed counsel to present its arguments on sentencing. See § 13A-5-47(c). The circuit court found that the murder was committed while Knight was on probation and that Knight had a prior conviction for violence in Florida. The circuit court also found a nonstatutory aggravating circumstance related to Knight's "pattern of causing the victim wife fear by breaking in her door and breaking out her windshield."[2] In regard to mitigating circumstances, the circuit court found that Knight had been under the influence of extreme mental or emotional disturbance for a period before the murder because he had learned approximately three months before that a friend, and not he, had fathered Latisha's second child. The circuit court also considered as nonstatutory mitigating evidence Knight's family history. The circuit court weighed the aggravating circumstances and the mitigating circumstances and sentenced Knight to death. The court issued a written sentencing order pursuant to § 13A-5-47(d), Ala.Code 1975. This appeal, which is automatic in a case where the defendant has been sentenced to death, followed. See § 13A-5-53(a), Ala.Code 1975.

Standard of Review
As with every direct appeal from a capital-murder conviction and death sentence, this Court must review the record of the circuit court proceedings for "plain error." See Rule 45A, Ala.R.App.P. Rule 45A states:
"In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason *474 thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
We have stated:
"`In considering what constitutes plain error in a capital case, we have adhered to the interpretation of the term "plain error" adopted by the Alabama Supreme Court, which follows the interpretation given that term by the federal courts. See Ex parte Harrell, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985); Ex parte Womack, 435 So.2d 766 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983). See also Hooks v. State, 534 So.2d 329 (Ala.Cr.App. 1987), aff'd, 534 So.2d 371 (Ala.1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989). Plain error is error that has or probably has adversely affected a substantial right of the appellant, Ala.R.App.P. 45A, or is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings. Ex parte Womack. The failure to object at trial weighs against any claim of prejudice an appellant may make. Kuenzel v. State, 577 So.2d 474 (Ala.Cr.App.1990), aff'd, 577 So.2d 531 (Ala.1991).'"
Frazier v. State, 758 So.2d 577, 582 (Ala. Crim.App.), aff'd, 758 So.2d 611 (Ala.1999), quoting Bush v. State, 695 So.2d 70, 87 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.1997). With these principles in mind we review the following issues.

Guilt-Phase Issues

I.
Knight argues that the circuit court erred in failing to grant his motion for a mistrial after the district attorney elicited allegedly improper hearsay evidence of Knight's prior bad acts. Knight asserts that this hearsay evidence was not admissible and that its admission prejudiced him.
During Officer James Brown's testimony, the prosecutor asked Brown about an earlier domestic dispute between Knight and his wife where police had been called to the Knight residence. The following occurred:
"Q [Prosecutor]: Was there a report of any sort of weapon?
"[Defense counsel]: Objection, Judge.
"The Court: I sustain the objection.
"Q [Prosecutor]: Who was the other person that was to have been involved in the fight?
"[Defense counsel]: Objection, Judge. May we approach?
"The Court: Yes, sir.
"[Defense counsel]: Judge, the prosecutor has asked three questions in a row that call for hearsay. She's clearly trying to testify by her own questions as to what happened. I would move at this time for a mistrial based upon improper questions and prosecutorial misconduct.
"The Court: I deny the motion for a mistrial. I'll allow the officer to testify as to what he observed but not what the victim told him."
(R. 1011-12.) Knight argues that this line of questioning was prejudicial because it implied that Knight had been violent toward the victim before the murder.
Knight relied on a defense of insanity and introduced the testimony of a clinical forensic psychologist. In rebuttal, the State introduced the testimony of Officer Brown and two of the victim's friends, Monica Absher and Scotty Conway, concerning a prior domestic dispute between the victim and Knight when police had been called to the Knight home. Officer *475 Brown testified that in March 2000, just three months before Latisha's murder, police were called to the Knight apartment. Brown testified that when he arrived Latisha had marks on her arms and neck. Another officer, Officer Benjamin Burke, testified that in March 2000 he arrested Knight on a domestic-violence complaint and when he searched the car Knight was driving he recovered a knife. Absher and Conway testified that they were with the victim at the time of the March 2000 domestic disturbance. They said that Knight had kicked in the apartment door and that he had knocked out the windshield in Latisha's car.
We have stated, "`A motion for a mistrial is a drastic remedy that should be used only to prevent manifest injustice. The ruling of the trial court on the motion will not be reversed unless there is a clear showing of abuse of discretion.'" Patterson v. State, 845 So.2d 861, 866 (Ala.Crim. App.2002), quoting Smith v. State, 745 So.2d 284, 292-93 (Ala.Crim.App.1998).
Here, the State introduced evidence of Knight's prior acts of violence toward the victim to rebut his insanity defense. As we stated in Burnett v. State, 518 So.2d 235 (Ala.Crim.App.1987):
"We find that the testimony was relevant to rebut appellant's insanity defense. We find in [Charles W. Gamble,] McElroy's [Alabama Evidence], § 69.01(10) [ (3d ed. 1977) ], the following:
"`If an accused, pleading not guilty by reason of insanity, introduces evidence warranting a finding of the truth of such plea, the state may prove his commission of other crimes as tending to show that he was not demented and that his commission of the now-charged crime was the offspring of a wicked propensity, rather than a diseased mind. Allowing the proof of such prior crimes is generally justified upon the basis of the rule that, in a plea of insanity, the prosecution can operate under the wide latitude theory in bringing out all the acts and declarations of the defendant. The only limiting factor upon this rule is the holding that the acts, declarations and conduct of the accused inquired about must have a tendency to shed light on his state of mind when the act for which he is being tried was committed.' (Footnotes omitted, emphasis in original.)
"For several cases recognizing this limitation, see Ex parte Miller, 460 So.2d 228 (Ala.1984); Nichols v. State, 276 Ala. 209, 160 So.2d 619 (1964); Barbour v. State, 262 Ala. 297, 78 So.2d 328 (1954). We also find in McElroy's, § 61.01(7):
"`The courts have adhered to the wide latitude rule relating to the admissibility of the conduct and condition of a criminally accused offered in support of his plea of insanity. This wide latitude has encompassed many forms of conduct and conditions which the trial courts have held are relevant to show his mental incapacity at the time in issue. This same wide latitude has been exercised in the decisions relating to the admissibility of the conduct and condition of the accused offered by the state in opposition to the accused's plea of insanity.' (Footnote omitted.)
"See, e.g., Watts v. State, 282 Ala. 245, 210 So.2d 805 (1968); Nichols v. State, supra; Grammer v. State, 239 Ala. 633, 196 So. 268 (1940).
"`Evidence of the prosecution tending to rebut a defense will not be excluded because it also tends to show the commission of another crime by the accused. Thus, ... where the accused asserted the defense of insanity, *476 evidence which tended to show that he was sane was admissible even though it also tended to show that he was guilty of another crime.'
"Wharton's Criminal Evidence § 258 (C. Torcia 13th ed. 1972) (footnote omitted)."
518 So.2d at 240. See also 1 Charles W. Gamble, McElroy's Alabama Evidence § 61.01(8) (5th ed. 1996).[3] The Alabama Rules of Evidence, adopted effective January 1, 1996, address a similar provision in Rule 405(b), Ala.R.Evid. That Rule states: "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct." "This represents conventional common law doctrine in both Alabama and the United States as a whole." Advisory Committee's Notes, Rule 405(b). The evidence concerning the specific acts of prior violence toward the victim was admissible to show a "course of conduct" that tended to indicate that the violence toward the victim that resulted in her death was not an isolated incident. See Prophitt v. State, 183 Ga.App. 332, 333, 358 S.E.2d 892, 893 (1987).
Knight argues that the testimony of the officers called for inadmissible hearsay and that it should have been excluded. However, even if the evidence was hearsay, it was rendered harmless when two eyewitnesses to the domestic dispute, Absher and Conway, testified to the events as they observed them in March 2000. If there was error it was harmless. "`The erroneous admission of evidence that is merely cumulative is harmless error.'" Ex parte Harris, 892 So.2d 875, 878 (Ala. 2004), quoting Dawson v. State, 675 So.2d 897, 900 (Ala.Crim.App.1995).

II.
Knight argues that the circuit court erred in failing to instruct the jury on heat-of-passion manslaughter as a lesser-included offense of capital murder. Knight argued at trial that he killed his wife in the "heat-of-passion" after she received a telephone call from the man he thought she was having an affair with. He contends that he was entitled to a jury instruction on heat-of-passion manslaughter based on this Court's holding in Anderson v. State, 507 So.2d 580 (Ala. Crim.App.1987). He also relies on a New Jersey case, State v. Vigilante, 257 N.J.Super. 296, 608 A.2d 425 (1992), that, he argues, acknowledged that "heat of passion can be generated by a course of conduct rather than a single incident." (Knight's brief at page 30.)
According to § 13A-6-2(b), Ala. Code 1975, a person is not guilty of murder if "he was moved to act by a sudden heat of passion caused by provocation required by law, and before there had been a reasonable time for the passion to cool and for reason to reassert itself."
The Alabama Supreme Court first recognized the legal principal addressed in § 13A-6-2(b), Ala.Code 1975, in 1893:
"Where one person detects another in the act of adultery with his wife, and he immediately slays the adulterer or his wife, as matter of law, the provocation is sufficient to reduce the killing to manslaughter. The law does not declare that any thing less than actual sexual intercourse is a sufficient provocation, as a matter of law, to reduce the offense from murder to manslaughter."
*477 Hooks v. State, 99 Ala. 166, 168, 13 So. 767, 768 (1893). This principle was reaffirmed by the Alabama Supreme Court in Brunson v. State, 212 Ala. 571, 103 So. 664 (1925).
However, in Anderson v. State, 507 So.2d 580 (Ala.Crim.App.1987), this Court, departing from long-established precedent, held that an accused was entitled to a jury instruction on heat-of-passion manslaughter based on his testimony that before he killed his wife he had visualized her nude standing by the bed of another man. This Court stated, "There was ... evidence, if believed by the jury, to support a reasonable theory that the death was caused due to a sudden heat of passion caused by provocation recognized by law and, hence, a charge under § 13A-6-3(a)(2) would have also been appropriate." 507 So.2d at 583. Anderson contained no discussion of whether the facts in that case constituted sufficient legal provocation for the killing; indeed, it was a radical departure from prior Alabama caselaw.
This Court acknowledged in Biggs v. State, 441 So.2d 989 (Ala.Crim.App.1983), that there was little law in Alabama concerning what, other than catching a spouse in the act of adultery, constitutes sufficient legal provocation for a heat-of-passion killing. The Biggs Court held that admissions of infidelity by one spouse to another were not sufficient to constitute legal provocation. We stated:
"Although it is firmly established in Alabama that if one party finds his or her spouse in the act of adultery, the subsequent killing of either the offending spouse or the paramour is deemed, as a matter of law, to be caused by sufficient provocation. Hooks v. State, 99 Ala. 166, 13 So. 767 (1893). No reported Alabama case has been decided on the basis that a spouse's admission of infidelity may also constitute adequate provocation for a `heat of passion' killing. See Farr v. State, 54 Ala.App. 80, 304 So.2d 898 [ (1974) ], McNeill v. State, 102 Ala. 121, 15 So. 352 [(1894)].
"To constitute adequate legal provocation, it must be of a nature calculated to influence the passions of the ordinary, reasonable man. Other than discovered adultery, courts have reached different conclusions as to what factual situations are embraced within this doctrine. See Commentary, § 13A-6-3, Code of Alabama 1975. See also Annot., 370 Mass. 438, 348 N.E.2d 802, 93 A.L.R.3d 920 (1979).
"The well established rule in Alabama is that mere words, no matter how insulting or abusive, cannot reduce a killing to manslaughter. Watson v. State, 82 Ala. 10, 2 So. 455 (1886). Appellant argues, however, that his wife's admission of past adulterous affairs, along with other degrading statements, constituted sufficient provocation to support a manslaughter verdict. Some other jurisdictions which follow the traditional rule that offensive statements are insufficient as a matter of law to support a finding of manslaughter do recognize that words conveying information may be sufficient provocation. People v. Rice, 351 Ill. 604, 184 N.E. 894 (1933); People v. Ahlberg, 13 Ill.App.3d 1038, 1041-1042, 301 N.E.2d 608 (1973); People v. Poole, 159 Mich. 350, 353, 123 N.W. 1093 (1909); Haley v. State, 123 Miss. 87, 85 So. 129 (1920); State v. Grugin, 147 Mo. 39, 48-62, 47 S.W. 1058 (1898); State v. Martin, 216 S.C. 129, 140, 57 S.E.2d 55 (1949).
"However, in Commonwealth v. Bermudez, 370 Mass. 438, 348 N.E.2d 802, 805 (1976), the Supreme Judicial Court of Massachusetts was confronted with a situation similar to the case at bar. In Bermudez the defendant was convicted of second degree murder for the killing *478 of his wife. The defendant told the police that he had been separated from his wife for approximately three weeks; he went to see her; while there he went upstairs to see their baby; and, when he came downstairs, his wife, using an obscenity, told him, `I don't need you around here, I have got another man.' After once more using an obscenity, she told him to get out. He then pulled a gun and shot her. The Massachusetts court held that the wife's intimation that she had committed adultery did not constitute sufficient provocation to support a manslaughter verdict. Citing Palmore v. State, 283 Ala. 501, 508, 218 So.2d 830 (Ala.1969), that court stated:
"`Past adultery lacks the peculiarly immediate and intense offense to a spouse's sensitivities which has led courts to recognize present adultery as adequate provocation, and many courts have refused to recognize discovery of past adultery as sufficient provocation.' [370 Mass. at 442,] 348 N.E.2d at 802.
"In the case at bar, no adulterous affair was discovered at the time of the shooting nor was there any mention by deceased of any past specific act of adultery. Mere suspicion, belief or knowledge of past adulterous affairs will not change the character of a homicide from murder to manslaughter. State v. Ward, 286 N.C. 304, 210 S.E.2d 407 (1974)."
441 So.2d at 992.
Even later in Speake v. State, 610 So.2d 1238 (Ala.Crim.App.1992), we acknowledged that the Alabama Supreme Court had never recognized any legal provocation sufficient to reduce a murder to heat-of-passion manslaughter unless the defendant actually caught his or her spouse in the act of adultery. We also noted that Alabama did not follow the modern trend. This Court stated:
"In Brunson v. State, 212 Ala. 571, 103 So. 664 (1925), the defendant shot the deceased after accusing the deceased of having `just lain' with his (the defendant's) wife. The defendant requested the following jury charge:
"`If the jury believes from the evidence that immediately before the killing the defendant's wife and the deceased engaged in the act of sexual intercourse, and the circumstances then and there coming to the knowledge of the defendant apprised him of the fact, if it be a fact, then there was in the eyes of the law adequate provocation such as would reduce the crime to manslaughter, if the defendant acted in the heat of passion thereby aroused, and killed the deceased while under the influence of such passion.'
"Brunson, 212 Ala. at 571, 103 So. at 665, 664. The Alabama Supreme Court held that the refusal of this requested charge was proper on the ground that `"[t]he law does not declare that any thing less than actual sexual intercourse is a sufficient provocation, as a matter of law, to reduce the offense from murder to manslaughter."' Brunson, 212 Ala. at 572, 103 So. at 665, quoting Hooks v. State, 99 Ala. 166, 168, 13 So. 767, 768 (1893).
"We note that `[t]he modern tendency is to extend the rule of mitigation beyond the narrow situation where one spouse actually catches the other in the act of committing adultery.' 2 W. LaFave and A. Scott, Substantive Criminal Law § 7.10(b)(5) (1986).
"`The formerly well-established rule that words alone (or words plus gestures) will never do for reducing an intentional killing to voluntary manslaughter has in many jurisdictions *479 changed into a rule that words also will sometimes do, at least if the words are informational (conveying information of a fact which constitutes a reasonable provocation when that fact is observed) rather than merely insulting or abusive words. Thus a sudden confession of adultery by a wife, or information from a third person that a wife has been unfaithful, has sometimes been held to constitute a provocation to the husband of the same sort as if he had made an "ocular observation" of his wife's adultery.'
"2 Substantive Criminal Law at § 7.10(b)(6) (footnotes omitted). See also Annot., 93 A.L.R.3d 925 (1979). Despite this `modern tendency,' this Court is bound by the decisions of the Alabama Supreme Court. Ala.Code 1975, § 12-3-16."
610 So.2d at 1240-41.
This Court's decision in Anderson was inconsistent with the law as previously announced by the Alabama Supreme Court. As we noted in Speake, we are bound by the decisions of the Alabama Supreme Court. See § 12-3-16, Ala.Code 1975. We now take this opportunity to correct our error in Anderson. To the extent that our decision in Anderson conflicts with prior Alabama Supreme Court decisions that case is hereby overruled.
Based on over 100 years of precedent we hold that no instruction on heat-of-passion manslaughter was warranted in this case because Knight did not catch his wife in the act of adultery. See McGriff v. State, 908 So.2d 961 (Ala.Crim.App.2000); Turner v. State, 708 So.2d 232 (Ala.Crim.App. 1997). The circuit court committed no error in denying Knight's request for an instruction on heat-of-passion manslaughter.

III.
Knight argues that § 13A-3-1, Ala.Code 1975, which defines legal insanity, violates the Equal Protection Clause because it treats people with mental illness disparately, because it defines one class of mental illness and others who do not fall within the statute's definition cannot avail themselves of an insanity defense. He argues in brief, "The Defendant was denied due process and equal protection under the 14th Amendment [of the United States Constitution] because his mental condition at the time of the offense, a condition called reactive psychosis, doesn't fit the legal definition of `mental disease or defect' under the Alabama statute." (Knight's brief at page 34.)
Section 13A-3-1, Ala.Code 1975, provides:
"(a) It is an affirmative defense to a prosecution for any crime that, at the time of the commission of the acts constituting the offense, the defendant, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.
"(b) `Severe mental disease or defect' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.
"(c) The defendant has the burden of proving the defense of insanity by clear and convincing evidence."
The identical issue presented in this case was addressed in-depth by this Court in Williams v. State, 710 So.2d 1276 (Ala. Crim.App.1996):
"[Williams] argues that § 13A-3-1 is unconstitutional because, he says, it violates his rights to due process, equal protection, trial by jury, and protection against cruel and unusual punishment. He argues that the statute denies due *480 process of law to defendants who are unable to conform their conduct to the requirements of law, because it denies them the right to raise the defense of volitional impairment (inability to conform one's conduct to the requirements of the law); the inability to raise this defense, he contends, results in the punishment of nonblameworthy and mentally ill persons. He contends that the statute improperly restricts the insanity defense to only those mentally ill defendants who are cognitively impaired (unable to appreciate the nature and quality or wrongfulness of one's act), thus denying those who are volitionally impaired equal protection of the law....
"`In 1988, the Alabama legislature replaced our insanity defense statute by enacting the "Reasonable Insanity Test Act of 1988," 1988 Ala. Acts 1051, No. 88-654, now codified at Ala.Code § 13A-3-1 (Supp.1990). Subsection (a) of that statute provides that:
"`"It is an affirmative defense to a prosecution for any crime that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality of wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense."
"`Section 13A-3-1(a) is virtually identical to the federal insanity defense statute, 18 U.S.C. § 17(a) (1988), which "was passed in the wake of John Hinckley's acquittal of charges arising from his actions in shooting President Ronald Reagan and Press Secretary James Brady." United States v. Cameron, 907 F.2d 1051, 1061 (11th Cir.1990).
"`The new Alabama and federal insanity statutes represent a significant change from the insanity defenses previously available in criminal trials.'
"Ware v. State, 584 So.2d 939, 942 (Ala. Cr.App.1991).
"....
"The Due Process Clause is satisfied so long as the law bears a reasonable relation to a proper legislative purpose and is neither arbitrary nor discriminatory. Fowler v. State, 440 So.2d 1195 (Ala.Cr.App.1983). Section 13A-3-1 bears a reasonable relation to a proper legislative purpose and does not violate the appellant's due process rights. Section 13A-3-1 does not deny the appellant equal protection of the law. It does not treat persons similarly situated differently nor does it contain unreasonable classifications. See Craig v. State, 410 So.2d 449 (Ala.Cr.App.1981), for the test of an equal protection violation. We find no merit in the appellant's contention that § 13A-3-1 denies him the constitutional right of trial by jury and we see no violation of the prohibition against cruel and unusual punishment. The definitional change of insanity proposed by the 1988 amendment, eliminating the volitional prong from the statute, does not render it constitutionally inadequate. Hart v. State, 702 P.2d 651 (Alaska App.1985). We hold that § 13A-3-1 is not unconstitutional. It comports with generally accepted concepts of basic standards of justice. See Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952); Hart v. State."
710 So.2d at 1308-09.
Knight also argues that Alabama's definition of insanity is based on an outdated and obsolete definition first announced in England in 1843 in McNaghten's Case, 10 Clark & Fin. 2000 (1843), and that Alabama should modernize its standard to address the evolving changes in the field of *481 mental illness. In essence Knight asks this Court to make a change in the definition of insanity as that term is currently defined in § 13A-3-1, Ala.Code 1975. It is not this Court's function to legislate. We are charged with interpreting existing lawnot changing it. Art. III, § 43, Ala. Const. of 1901.[4] Such power rests solely in the hands of the Alabama Legislature. See State v. Uyesugi, 100 Haw. 442, 60 P.3d 843 (2002) (court noted that the Hawaii Legislature had amended the definition of insanity because the McNaghten rule was outdated); Finger v. State, 117 Nev. 548, 27 P.3d 66 (2001) (court noted that the Nevada Legislature had modernized the definition of insanity); Ramos v. State, 991 S.W.2d 430 (Tex.Ct.App.1999) (court noted that Texas Legislature had amended its definition of insanity); State v. Gardner, 616 A.2d 1124 (R.I.1992) (court noted that Rhode Island Legislature had adopted the American Law Institute's definition of insanity).

Penalty-Phase Issue

IV.
Knight argues that the death penalty violates both the United States Constitution and the Alabama Constitution because, he argues, it constitutes cruel and unusual punishment.
We have repeatedly held that the death penalty is not per se unconstitutional. See Hocker v. State, 840 So.2d 197 (Ala.Crim.App.2002); Clark v. State, 896 So.2d 584 (Ala.Crim.App.2000); Owens v. State, 531 So.2d 2 (Ala.Crim.App.1986); Magwood v. State, 494 So.2d 124 (Ala. Crim.App.1985); Harris v. State, 352 So.2d 460 (Ala.Crim.App.1976).
Knight also argues that the death penalty violates the constitutional guarantees of equal protection of the law and both substantive and procedural due process. Knight makes no specific claims in support of this contention either at trial or in his brief to this Court.
As this Court stated in Deardorff v. State, [Ms. CR-01-0794, June 25, 2004] ___ So.2d ___ (Ala.Crim.App.2004):
"`Our analysis begins with the basic principle that a defendant who alleges an equal protection violation has the burden of proving "the existence of purposeful discrimination." Whitus v. Georgia, 385 U.S. 545, 550 (1967). A corollary to this principle is that a criminal defendant must prove that the purposeful discrimination "had a discriminatory effect" on him. Wayte v. United States, 470 U.S. 598 (1985).'
"McCleskey v. Kemp, 481 U.S. 279, 292 (1987) (footnote omitted).
"The same principle applies with regard to the examination of due-process claims. The United States Supreme Court stated what has become an oft-cited principle, `A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights.' County Court of Ulster County, N.Y. v. Allen, 442 U.S. 140, 154-55 (1979).

*482 "The State correctly argues that Deardorff has made no attempt to allege or prove a discriminatory intent or a specific due-process violation. His `boilerplate' allegations regarding alleged inequities, such as his conclusory statement that `the entire death penalty structure in this state and in this country is unconstitutional on its face and should be abolished as such' ... do not establish that any of his rights to due process and equal protection were infringed."
___ So.2d at ___. Knight has failed to show how his sentence of death violates his due-process and equal-protection rights. Knight has failed to meet his burden and is due no relief on this claim.

V.
Knight argues that his death sentence violates the United States Supreme Court's holding in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), because, he says, the facts that increased the penalty to death were not first determined by a jury beyond a reasonable doubt.
The United States Supreme Court in Ring applied its earlier holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to death-penalty cases. The Court held, "[c]apital defendants ... are entitled to a jury determination on any fact on which the legislature conditions an increase in their maximum punishment." Ring, 536 U.S. at 589, 122 S.Ct. 2428.
Here, Knight was convicted of killing his spouse while she was inside a vehicle. The capital offense of which Knight was convicted does not include as an element any aggravating circumstance listed in § 13A-5-49 that makes this murder eligible for the death penalty; therefore, the State was obliged to prove at least one of the enumerated statutory aggravating circumstances contained in § 13A-5-49, Ala.Code 1975, before Knight could be sentenced to death. See § 13A-5-45(f), Ala.Code 1975. One aggravating circumstance presented in this case that made Knight eligible for the death penalty  that the murder was committed while Knight was under a sentence of imprisonment[5] was not subject to the holding in Ring. As this Court stated in Stallworth v. State, 868 So.2d 1128 (Ala.Crim.App.2001):
"[O]ne of the aggravating circumstances in this case related to a prior conviction  that the capital offense was committed by a person under sentence of imprisonment. See § 13A-5-49(a)(1), Ala.Code 1975. The Apprendi Court specifically excluded from its holding prior convictions. The Apprendi Court stated, `Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' 530 U.S. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435. The Court left untouched its holding in Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), that an increase in a sentence *483 related to recidivism is left to the trial court."
868 So.2d at 1184. See also Lewis v. State, 889 So.2d 623 (Ala.Crim.App.2003); Moody v. State, 888 So.2d 532 (Ala.Crim. App.2003). "Only one aggravating circumstance must exist in order to impose a sentence of death." Ex parte Waldrop, 859 So.2d 1181, 1188 (Ala.2002). Therefore, Knight's death sentence does not violate the United States Supreme Court's holding in Ring.

VI.
The State concedes that this case must be remanded for the circuit court to correct its sentencing order. It cites several different reasons in support of this assertion.
In its sentencing order the circuit court found the aggravating circumstances that Knight was under a sentence of imprisonment at the time that the murder was committed, § 13A-5-49(1), Ala.Code 1975, and that Knight had previously been convicted of a crime involving the use of violence or the threat of violence, § 13A-5-49(2), Ala.Code 1975. The trial court also found a nonstatutory aggravating circumstance related to Knight's "pattern of causing the victim wife fear by breaking in her door and breaking out her windshield."
The circuit court correctly applied the aggravating circumstance defined in § 13A-5-49(1), Ala.Code 1975. The State introduced evidence that in 1999 Knight pleaded guilty to receiving stolen property and theft of property. He was sentenced to seven years' imprisonment; that sentence was suspended and he was placed on supervised probation for five years. Knight was on probation at the time of the murder. For purposes of § 13A-5-49(1), Ala.Code 1975, Knight was under a sentence of imprisonment when he committed this offense.

A.
The State concedes that the circuit court improperly relied on an aggravating circumstance that is not defined as an aggravating circumstance in § 13A-5-49, Ala. Code 1975.
The circuit court found the presence of a nonstatutory aggravating circumstance related to Knight's pattern of violence toward his wife  the victim. This is not an aggravating circumstance defined in § 13A-5-49, Ala.Code 1975. We have held, "`A trial court may consider only those aggravating circumstances listed in § 13A-5-49 in fixing the death penalty. Clisby v. State, 456 So.2d 99 (Ala.Cr.App. 1983); Berard v. State, 402 So.2d 1044 (Ala.Cr.App.1980).'" Ponder v. State, 688 So.2d 280, 285 (Ala.Crim.App.1996) (quoting Bush v. State, 695 So.2d 70, 92 (Ala. Crim.App.1995)). Accordingly, this aggravating circumstance was erroneously applied in this case.

B.
The State further concedes that the trial court's order fixing Knight's sentence at death should be clarified regarding its findings that Knight had a prior conviction for a crime of violence in the State of Florida. Evidence of Knight's prior conviction in Florida for robbery without a weapon was introduced to support the application of the aggravating circumstance that Knight had "previously [been] convicted of another capital offense or a felony involving the use or threat of violence to the person." § 13A-5-49(2), Ala.Code 1975. The State asserts that the circuit court "mistakenly noted that there were two possible robbery statutes under which Knight may have been convicted and the trial court found that Knight had been *484 convicted for the violent felony." (State's brief at page 18.)
The circuit court made the following findings concerning this aggravating circumstance:
"The prosecution, during the penalty phase of the jury trial, introduced a certified copy of a judgment of conviction for robbery without a weapon in the circuit court of Escambia County, Florida. The court notes that the State of Florida has two statutes defining robbery without a weapon. One is robbery without a weapon, and the other is robbery by sudden snatching. During the penalty phase, the defendant testified that the Florida robbery conviction was based upon the fact that he saw a woman's purse, which contained a large sum of money, in a shopping cart in a discount store, but was apprehended in the parking lot. The prosecution presented no evidence tending to refute the defendant's version of the crime. Because the Florida case action summary does not specify which statute the defendant was convicted under, the court concludes the jury could find that the defendant had been previously convicted of a felony offense involving the threat of violence to a person. Thus, such aggravating circumstance is deemed to exist."
(C.R. 10.)
The State correctly notes that the trial court's order incorrectly concludes that at the time that Knight pleaded guilty to robbery in Florida, Florida had two different statutes defining the offense of robbery. In October 1996, the date of Knight's conviction, there was no crime of "robbery by snatching." Robbery by snatching, now contained in Fla. Stat. § 812.13, did not become law until October 1999. Therefore, it was impossible for Knight to plead guilty to robbery by snatching.
Nonetheless, the record reveals that the circumstances surrounding Knight's 1996 Florida robbery conviction made application of this aggravating circumstance inconsistent with prior caselaw. In Hadley v. State, 575 So.2d 145 (Ala.Crim.App. 1990), in assessing the application of this aggravating circumstance to a prior conviction for attempted arson, we stated:
"Historically, offenses which have been found to uphold this aggravating circumstance include: armed robbery, State v. Hamlette, 302 N.C. 490, 276 S.E.2d 338 (1981); kidnapping and attempted first degree murder, Fitzpatrick v. State, 437 So.2d 1072 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1328, 79 L.Ed.2d 723 (1984); discharging a firearm into occupied property, State v. Brown, 320 N.C. 179, 358 S.E.2d 1 (N.C.1987), cert. denied, 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987); and robbery and aggravated robbery, Gardner v. State, 297 Ark. 541, 764 S.W.2d 416 (1989). In Alabama, offenses which have been held to uphold this aggravating circumstance include: robbery, Brownlee v. State, 545 So.2d 151 (Ala.Cr.App.1988), affirmed, 545 So.2d 166 (Ala.1989), cert. denied, [493] U.S. [874], 110 S.Ct. 208, 107 L.Ed.2d 161 (1989); capital murder, Jones v. State, 450 So.2d 165 (Ala.Cr.App.1983), affirmed, 450 So.2d 171 (Ala.1984), cert. denied, 469 U.S. 873, 105 S.Ct. 232, 83 L.Ed.2d 160 (1984); manslaughter, Siebert v. State, 562 So.2d 586 (Ala.Cr.App. 1989), affirmed, 562 So.2d 600 (Ala. 1990); murder, Jackson v. State, 459 So.2d 963 (Ala.Cr.App.), affirmed, 459 So.2d 969 (Ala.1984), cert. denied, 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985); murder and criminal assault, Coulter v. State, 438 So.2d 336 (Ala.Cr. App.1982), affirmed, 438 So.2d 352 (Ala. *485 1983); and robbery, Ex parte Thomas, 460 So.2d 216 (Ala.1984).
"... In Commonwealth v. Christy, 511 Pa. 490, 515 A.2d 832 (1986), the State submitted the defendant's prior convictions of escape and burglary in order to warrant the aggravating factor that the defendant had a significant history of felony convictions involving threat or use of violence to the person. The Pennsylvania Supreme Court wrote:
"`At the sentencing hearing, the Commonwealth argued that the inquiry here is whether "someone could have been seriously injured," equating the "threat of violence" with the "potential for violence." The trial court erroneously agreed with this argument. In our view, the language of 42 Pa.C.S. § 9711(d)(9) is clear as to this point. It is the "threat of" and not the "potential for" violence that brings a crime into this category.
"`Force is not an element of either of these crimes. Indeed, both crimes can be committed without even encountering another person. Every felony has the potential for violence if the actor is caught. This, however, is not what the legislature intended by the words "threat of violence" to the person. In order for a felony to be includable under 42 Pa.C.S. § 9711(d)(9), the Commonwealth must present evidence that the defendant actually threatened another with violence or actually used violence on another.'
"Commonwealth v. Christy, supra, [511 Pa. at 507-08,] 515 A.2d at 840-41.
"`Also, the felony for which the [defendant has been] convicted must be one involving threat or use of violence to the person. It cannot, under this provision, be a crime against property.' State v. Goodman, 298 N.C. 1, 16, 257 S.E.2d 569, 584 (1979)."
575 So.2d at 156-57.
Here, the State had the burden of establishing the applicability of any of the statutory aggravating circumstances set out in § 13A-5-49, Ala.Code 1975. See § 13A-5-45(e), Ala.Code 1975.[6] The State had to prove the existence of the aggravating circumstance beyond a reasonable doubt. Id. Knight testified at the penalty phase and stated the following concerning the circumstances surrounding his Florida conviction:
"[Defense counsel]: Greg, we didn't cover one thing about your case in Florida. And you admit that you were arrested for robbery?
"[Knight]: Yes.
"[Defense counsel]: I believe that it's robbery without a weapon.
"[Knight]: Yes.
"[Defense counsel]: Where were you right before you got arrested for this?
"[Knight]: I was in Big Lots [discount store] in Pensacola.
"[Defense counsel]: Is that some type of a store over there?
"[Knight]: Yes.
"[Defense counsel]: Okay. And apparently you took something. Can you elaborate on what the facts were?
"[Knight]: While in the store, I went in the store to purchase an item. I don't know what I went in there to buy, but I was in the store and, um, I was walking by this lady and she'd left the cart. And I just looked in it and it had a wad of *486 hundred-dollar bills on the top that I saw and so I grabbed it.
"[Defense counsel]: Okay. Did you push her away?
"[Knight]: No. She was, she was away from the cart. The reason why they charged it with the robbery is because she had $1,400.
"[Defense counsel]: The dollar value is what elevated it?
"[Knight]: Yes.
"[Defense counsel]: At least in your mind.
"[Knight]: Yes. It had a robbery/petty theft because the robbery was the $1,400. The petty theft was because I took it.
"[Defense counsel]: Did you threaten anybody?
"[Knight]: No.
"[Defense counsel]: Did you use any force?
"[Knight]: No.
"[Defense counsel]: Uh, you didn't have a weapon.
"[Knight]: No.
"[Defense counsel]: Just sort of saw it, there it was, grabbed it and ran?
"[Knight]: Yes.
"[Defense counsel]: How far did you make it before you got caught?
"[Knight]: In the parking lot.
"[Defense counsel]: The store security or somebody catch you?
"[Knight]: Yes.
"[Defense counsel]: Did you have any struggles with them or did you, did they just stop you?
"[Knight]: No, they just stopped me. I just gave it up."
(R. 1314-15.) The State offered no evidence to contradict Knight's rendition of the facts. Knight's testimony fails to establish that his robbery conviction in the State of Florida was for "a felony involving the use or threat of violence to the person." § 13A-5-49(2), Ala.Code 1975. The State failed to present evidence indicating that Knight's prior conviction constituted a statutory aggravating circumstance as defined in § 13A-5-49(2), Ala.Code 1975. This aggravating circumstance was improperly used in this case.

C.
The State also requests that we direct the circuit court to clarify its order with regard to whether the mitigating circumstance that Knight had no significant history of prior criminal activity was present in this case. It asserts that the circuit court improperly considered Knight's prior juvenile adjudications when assessing whether this mitigating circumstance was present. The circuit court's order states:
"The court finds from the evidence and the pre-sentence investigation report compiled by the probation officer that the defendant does have a significant history of criminal activity as a juvenile, as a youthful offender, and as an adult. The court finds that this mitigating circumstance is not present."
(C.R. 12.)
A trial court may not rely on a defendant's juvenile record or prior adjudications under the Youthful Offender Act to negate the mitigating circumstance of no significant history of prior criminal activity. See Ex parte Carroll, 852 So.2d 833 (Ala.2002); Freeman v. State, 555 So.2d 196 (Ala.Crim.App.1988), aff'd, 555 So.2d 215 (Ala.1989), cert. denied, 496 U.S. 912, 110 S.Ct. 2604, 110 L.Ed.2d 284 (1990). As the Alabama Supreme Court stated in Ex parte Burgess, 811 So.2d 617 (Ala. 2000):
"[A] trial court may consider a defendant's juvenile adjudications to be a relevant *487 consideration in deciding what weight to assign to the statutory mitigating circumstances of a defendant's lack of a significant prior criminal history and a defendant's age at the time of the offense.... In other words, during the sentencing process in a capital case, the trial court may use a defendant's juvenile record to diminish the weight to be accorded the mitigating circumstance of that defendant's lack of a significant history of prior criminal activity, as well as the mitigating circumstance of that defendant's age at the time he or she committed the capital offense, but the trial court may not use the juvenile record as the basis for giving little or no weight to such mitigating circumstances."
811 So.2d at 624.

D.
The circuit court also stated in its sentencing order that it could find no Alabama case in which an appellate court had upheld the application of the death penalty to a capital-murder conviction for killing a person while that person was inside a vehicle.
This Court has affirmed a sentence of death in cases where a defendant was convicted of murdering an individual inside a vehicle and there was an appropriate aggravating circumstance that supported the imposition of the death penalty. See Key v. State, 891 So.2d 353, 382 (Ala.Crim.App. 2002) (opinion on return to remand); McNabb v. State, 887 So.2d 929, 989 (Ala. Crim.App.2001) (opinion on return to remand); McGriff v. State, 908 So.2d 961 (Ala.Crim.App.2000).

VII.
Not only must the circuit court correct its sentencing order but in reviewing this case for plain error it has come to this Court's attention that the circuit court improperly instructed the jury during the penalty phase on one of the aggravating circumstances that we have previously stated should not have been applied in this case. The circuit court instructed the jury that Knight's prior Florida conviction could be used to find the existence of the aggravating circumstance defined in § 13A-5-49(2), Ala.Code 1975. The circuit court also incorrectly defined the Florida robbery statutes and gave a definition on robbery by sudden snatching  an offense that was not the law in Florida until after Knight pleaded guilty to robbery.
The Alabama Supreme Court in Ex parte Williams, 556 So.2d 744 (Ala.1987), recognized the importance of a jury's recommendation when it refused to find harmless error after the circuit court improperly instructed a jury on the aggravating circumstance that Williams was under a sentence of imprisonment at the time of the offense, when in fact he was not, even though the circuit court did not apply that aggravating circumstance. The Supreme Court noted that it could not apply the harmless-error doctrine because, "[t]he basic flaw in this rationale is that it totally discounts the significance of the jury's role in the sentencing process." 556 So.2d at 745. See also Ex parte Stewart, 659 So.2d 122 (Ala.1993).[7]
In Ex parte Hagood, 777 So.2d 214, 218 (Ala.1999), the Alabama Supreme Court stated:
"In Ex parte Stewart, 659 So.2d 122 (Ala.1993), we reversed a death sentence *488 and remanded the case for the trial court to conduct new sentencing proceedings because the trial court had given an erroneous instruction to the jury during the sentencing phase. We held that although the trial court properly found two statutory aggravating circumstances, this fact did not render the erroneous instruction harmless. Id. at 128. Our holding in Stewart was based upon Ex parte Williams, 556 So.2d 744 (Ala.1987), wherein we had held that the mere fact that a sentencing jury had considered an improper aggravating circumstance required that the sentence of death be set aside, despite the fact that the trial court had properly exercised its sentencing authority. 556 So.2d at 745."
Compare Ex parte Broadnax, 825 So.2d 233 (Ala.2001) (the Alabama Supreme Court applied the harmless-error analysis to a circuit court's instructions on the consideration the jury was to give mitigating circumstances  a jury instruction that was insufficient, not erroneous).
The circuit court instructed the jury to consider an improper aggravating circumstance. Therefore, based on Stewart and Williams, Knight is entitled to a new sentencing hearing before a jury.
For the foregoing reasons, this case is remanded to the circuit court for Baldwin County for that court to hold a new sentencing hearing before a duly empaneled jury and enter a new sentencing order after weighing the aggravating circumstances and the mitigating circumstances. Due return should be filed in this Court within 140 days from the date of this opinion.
AFFIRMED AS TO CONVICTION; REVERSED AS TO SENTENCING; AND REMANDED.
McMILLAN, P.J., and COBB and SHAW, JJ., concur. BASCHAB, J., recuses herself.

On Return to Remand
WISE, Judge.
The appellant, Gregory Knight, was convicted of murdering his wife, Latisha Knight, while she was in a motor vehicle, an offense defined as capital by § 13A-5-40(a)(17), Ala.Code 1975. Knight was sentenced to death. He appealed his conviction and sentence to this Court. By opinion dated October 1, 2004, we affirmed Knight's capital-murder conviction, but we remanded the case for the circuit court to hold a new penalty-phase hearing and to enter a new sentencing order after weighing the appropriate aggravating circumstances and mitigating circumstances as we discussed in our opinion. Knight v. State, 907 So.2d 470 (Ala.Crim.App.2004). This case is now before this Court on return to remand.
The record on remand shows that the State chose not to pursue the death penalty. Knight voluntarily waived his right to a sentencing hearing before a jury. See § 13A-5-44, Ala.Code 1975. The circuit court then entered a new sentencing order and sentenced Knight to life imprisonment with the possibility of parole. Knight's sentence is now due to be, and it is hereby, affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB and SHAW, JJ., concur. BASCHAB, J., recuses herself.
NOTES
[1] Knight was not the father of the second child, who was seven months old at the time of this offense.
[2] This improper finding will be discussed later in this opinion.
[3] This section states, in part: "When the accused pleads insanity, ... the prosecution then may introduce evidence of the commission of other relevant crimes and misdeeds by the accused." (Footnote omitted.)
[4] Art. III, § 43, Ala. Const. of 1901, states:

"In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."
[5] The record shows that in 1999 Knight pleaded guilty to receiving stolen property and theft of property. He was sentenced to seven years' imprisonment; that sentence was suspended and he was placed on supervised probation for five years. Section 13A-5-39(7), Ala.Code 1975, defines "under sentence of imprisonment" as that term is used in § 13A-5-49(1): "[T]he term means while serving a term of imprisonment, while under a suspended sentence, while on probation or parole, or while on work release, furlough, escape, or any other type of release or freedom while or after serving a term of imprisonment...."
[6] This section states, in part: "At the sentence hearing the state shall have the burden of proving beyond a reasonable doubt the existence of any aggravating circumstances." This section excludes those aggravating circumstances, if any, that were proven by the jury's verdict in the guilt phase.
[7] Here, the error is even greater because the circuit court also applied this inappropriate aggravating circumstance.